570 So.2d 161 (1990)
UNIQUE CONSTRUCTION COMPANY, INC., and Anthony J. Savarino
v.
S.S. MINI STORAGE, INC., d/b/a Southmark Storage.
No. 90-CA-338.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1990.
Rehearing Denied December 17, 1990.
*163 David L. Neeb, Metairie, for plaintiffs-appellants.
Steeg & O'Connor, Randy Opotowsky, Stephen D. Marx, New Orleans, for defendant-appellee.
Before CHEHARDY, C.J, and DUFRESNE and GOTHARD, JJ.
CHEHARDY, Chief Judge.
This is an action for the wrongful conversion of goods which were auctioned to enforce a lessor's privilege upon the lessee's default under LSA-R.S. 9:4756 et seq., the Self-Service Storage Facility Act. The district judge found a violation of the statute and awarded damages for loss of the stored goods. Plaintiff-lessee appeals and seeks: (1) an increase in the award for loss of the stored goods; (2) an award of attorney's fees and interest on the judgment; (3) a finding that the lessor violated the Unfair Trade and Consumer Protection Act, LSA-R.S. 51:1409. With amendment to award judicial interest, we affirm.
On July 26, 1986, plaintiff Anthony J. Savarino, d/b/a Unique Construction Co., Inc., leased Storage Unit B-478 from S.S. Mini Storage, Inc., a/k/a Southmark Storage, Inc. The lease was executed for a month-to-month term; the monthly rental was $90. Mr. Savarino stored the following property:
1. Parts for a 1966 model TH255 Grove Hydraulic Crane with a 20-foot main boom and a 20-inch extension, consisting of: a 671 cubic inch Detroit engine; a 471 cubic inch Detroit engine; a Grove upper control valve system; four Grove outrigger cylinders, and three tires and rims for the Grove Crane.
2. One Mitchell 2,000 pound capacity weight scale.
3. Three AT&T telephones and power packs.
4. An executive desk and chair.
5. One filing cabinet.
He estimated its value at $30,000.
After November 1, 1986, Mr. Savarino as lessee ceased to make monthly rental payments. On January 13, 1987, Ms. Charlotte Moran, lessor's manager, sent a notice of lien sale to lessee by certified mail. The notice stated that the contents of the storage unit would be sold if the rent was not brought up to date by January 27, 1987. Mrs. Darlene Savarino met with Ms. Moran to make a partial rent payment. Ms. Moran told Mrs. Savarino that if the rental payments were not brought up to date by February 28, 1987, the lien sale would proceed. Mrs. Savarino claims that Ms. Moran merely stated that the stored property would remain under padlock until the rent was brought current.
On March 10, 1987 and April 2, 1987, Ms. Moran mailed invoices which set forth the rental balance due and requested payment. These invoices were sent by regular mail to the Savarinos' last known address; they claim not to have received them. On April 1, 1987 the stored property was advertised for sale in the Kenner News Journal. On April 6, 1987 Ms. Moran attempted to notify the Savarinos of the upcoming sale by certified mail. The notice was returned unaccepted by the Savarinos. On April 11, 1987 the property was offered for auction. Southmark bid in the property, which was removed and sold in May 1987 by Henson Auctions. Total proceeds of the contents of several units auctioned that day were $503.50. Southmark netted $81.63 from the sale.
In September 1987 Mrs. Savarino contacted Southmark with the intention of bringing the rent up-to-date. She learned that the contents of the storage unit had been sold at auction. This suit ensued.
LSA-R.S. 9:4758 grants the owner of a self-service storage facility a privilege on all movable property stored, to satisfy the debt due in unpaid rent. The owner/lessor may seize and sell the stored property to satisfy the obligation. Before executing on this privilege the lessor must notify the lessee either in person or by certified mail, of the upcoming sale. The notice must *164 include a copy of the rental agreement, a statement of the sum due, a description of the stored property, a notification that the lessee has been denied access to the property, a demand for payment and a statement that the stored contents are subject to the owner's privilege. LSA-R.S. 9:4759(4)(a-f). The trial court found that the lessor Southmark had violated the statute because its notices did not comply with the statutory requisites. It held the lessor liable for damages for wrongful conversion of the lessee's goods.
The district court found that the value of the crane partstwo engines, upper control valve system, four outrigger cylinders and three tires and rimswas not proved by competent evidence. It denied damages for loss of these items. It further found that the value of lost paper work, accounts receivable and income tax records contained in the stored file cabinet was not proved by trial testimony, and denied recovery for the loss of these items. The court awarded damages as follows: $225 for the Mitchell scale, $525 for the telephones, $580 for the desk and chair, $70 for the file cabinet and $3,000 in general damages for inconvenience and loss of equipment stored, total $4,200. Lessee appeals the quantum award as inadequate.

CRANE PARTS
A conversion consists of an act in derogation of another's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. Quealy v. Paine, Webber Jackson & Curtis, Inc., 475 So.2d 756 (La.1985). One found guilty of tortious conversion is liable in damages. The measure of recovery is the return of the property itself, or if the property cannot be returned, the value of the property at the time of the conversion. Id. at 761; and see Jackson v. Brumfield, 442 So.2d 518 (La.App. 1 Cir.1983).
As in any tort action, in a suit for wrongful conversion plaintiff bears the burden of proving the extent of the damages he suffered. Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La. 1983). A judgment awarding no damages is valid where plaintiff fails to prove damages caused by the tortious act of the defendant, even though the defendant is at fault. Jefferson v. Landwehr, 409 So.2d 351 (La.App. 1 Cir.1981).
In the instant case the trial court found that testimony of plaintiff's expert provided only an estimated value of an entire crane. Plaintiff provided no evidence of the value of component crane parts, two motors, valve system, outriggers and tires stored in Unit B-478. Because the lessee failed to carry its burden of proof of loss the trial court denied damages.
On appeal lessee argues that it is entitled to recover for the cost of crane parts because it made out a prima facie case of loss and Mr. Savarino's testimony as to the estimated value of the crane was uncontradicted.
At trial Mr. Savarino testified that the Grove crane was bought in 1981 for $32,000 by Savarino Crane Services, Inc., presently an inactive corporation. After 1984, Mr. Savarino's construction business declined. He dismantled the crane and rented storage space for the parts that were subject to deterioration when exposed to outside elements: a 50-ton 671 motor, a 471 motor, a crane operator's cab with outriggers and control valve system, and five tires. The remaining crane parts, main boom, winch and seven tires were stored in a yard in Kenner.
The two motors were dismantled when stored. Mr. Savarino testified that it would take five men approximately ten days to reassemble the motors and refit the crane to working condition. Based on personal experience Mr. Savarino stated that the individual crane parts exceeded the value of the assembled crane. However these parts, particularly the control valves and cylinders, were only of value to someone who wanted to incorporate them into a similar model crane, otherwise they were worthless.
Plaintiff's expert auctioneer Timothy Mutz testified based on Mr. Savarino's description *165 of the Grove crane. He estimated the value of a 1966 cherry picker hydraulic crane, in normal condition, with 40 feet of boom and a 471 Detroit engine at $18,370.
On cross-examination Mr. Mutz testified that he understood that the crane had been disassembled and that only parts were stored in Unit B-478. He had never examined the parts themselves or representative photos. He was not asked to value the stored parts, motors, cylinders or control valves.
We agree with plaintiff-lessee's contention that where no contradictory evidence is presented, plaintiff's testimony as to the value and description of the lost property, including the place of purchase and the price, may satisfy his burden of proof. Vallee v. Hyatt Corp., 433 So.2d 1070 (La.App. 4 Cir.1983). However this testimony must include a minimal degree of detail or specificity as to value to support an award of monetary damages. Casadaban v. Bel Chemical & Supply Co., Inc., 322 So.2d 854 (La.App. 1 Cir.1975); and see Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). Here plaintiff-lessee provided no evidence as to the value of the stored component crane parts. In the absence of such evidence, we find that the district judge was correct in denying damages for these losses. Compare Smith v. Chemical Construction Corporation, 215 So.2d 530 (La. App. 1 Cir. 1968).

GENERAL DAMAGES
We affirm the trial court award based on Mr. Mutz's valuation of $1,200 for loss of the Mitchell scale, telephones, desk and chair, and file cabinet. We further affirm the district court award of $3,000 in general damages for mental anguish and inconvenience associated with the loss of use of these items. Quealy, 475 So.2d at 762.

BUSINESS RECORDS
The filing cabinet stored in Unit 478 contained records of accounts receivable, payroll records and tax papers. The cabinet was locked and Mr. Savarino did not advise Ms. Moran or Southmark of the nature of its contents. When the cabinet was sold at auction to satisfy the lien, the contents were lost.
At trial the Savarinos testified that they are presently under an IRS assessment for unpaid payroll taxes. The IRS has advised that Savarino Crane Service, Inc., owes $90,000 in back taxes of which Mr. Savarino/Unique Construction Co., Inc., is personally responsible for $32,000. Mrs. Savarino stated that as a result of the tax lien the couple can neither sell their house nor buy a car. They need the missing records to respond to the IRS tax lien and cannot adequately defend against the assessment without them. The Savarinos contend that Southmark is responsible in damages for the loss of financial records.
The trial court held that plaintiff-lessee did not claim loss of the market value of the business records and denied recovery. It further found that Mr. Savarino failed to establish whether or how his tax liability might be affected by recovery of the records. Observing that the estimated tax liability might increase by the location and production of the records the court denied plaintiff-lessee's claim for mental anguish for the burden of having to reassemble the records as speculative.
On appeal plaintiff-lessee contends that the inability to quantify damages does not preclude an award and that the measure of damages is the actual or intrinsic value of the property to the owner. Emerson v. Empire Fire & Marine Ins. Co., 393 So.2d 691 (La.1981). Therein the court awarded damages for the loss of raw data representing brain wave studies conducted purely as a hobby. The research notes had no ascertainable market value. Plaintiff and his experts testified that it would require the expenditure of 1,000 hours of time or the expenditure of $77,000 to hire a research corporation to reproduce the research. The court, however, awarded what it found to be the intrinsic value of the research to plaintiff in terms of intellectual gratification, $7,500.
*166 In the instant case the court denied mental anguish damages for loss of the income tax records considering the loss of "intellectual gratification" to be speculative. We agree. There was absolutely no clear description of the lost tax papers in trial testimony. They were referred to simply as payroll records. There was no specificity as to the business enterprises from which they were derived. The Savarinos testified to being under an IRS tax assessment, but gave no indication of what years or construction jobs against which the penalties were incurred. Their testimony as to tax liability is hearsay with no substantiating documentary proof.
Neither, as the trial court observed, is there any indication of how the Savarinos' tax liability would be affected if the records were available to them. The trial court has wide discretion in fashioning a damage award, or in denying damages where these are not proved. Borden, supra. We believe the trial judge was correct in denying recovery for intrinsic damages for the loss of the financial papers. See generally, Perniciaro v. Brinch, 384 So.2d 392 (La.1980).

ATTORNEY'S FEES AND JUDICIAL INTEREST
The lease agreement for Storage Unit B-478 provides, "In the event that Lessor is required to employ an attorney to take legal action in respect to the enforcement of this Agreement and/or in conjunction with the sale of collateral, the prevailing party in such matter will be entitled to recover attorney's fees from the other party." Plaintiff-lessee seeks an award of attorney's fees under the lease.
This action, however, is not a suit on the lease. Lessee brought suit in tort for wrongful conversion of goods and for a violation of the Self-Service Storage Facility Act. Neither LSA-C.C. art. 2315 nor LSA-R.S. 9:4756 et seq. provide for an award of attorney's fees to the prevailing party. Plaintiff-lessee's claim for attorney's fees is denied.
The district court judgment in favor of plaintiff-lessee was silent as to the award of interest. It is amended to include an award of interest from the date of judicial demand. LSA-R.S. 13:4203.
UNFAIR TRADE PRACTICES
LSA-R.S. 51:1405 et seq., affords a private right of action to one who is damaged by another's intentional use of an unfair or deceptive method, act or practice in the conduct of any trade or commerce. Under this statute plaintiff-lessee seeks treble damages against the lessor for tortious conversion of the stored goods.
Although we agree that the lessor wrongfully converted the goods we find that it did so while exercising a valid recourse afforded it by law. While it did not comply with the strict statutory requirements, there is no evidence that the lessor's conduct was dishonest, unethical or deceitful or fraudulent so as to bring its conduct within the purview of the statute. Dufau v. Creole Engineering, Inc., 465 So.2d 752 (La.App. 5 Cir.1985). The trial court's denial of recovery under this theory of liability is affirmed.
CONCLUSION
The district court judgment on liability, the denial of an award for damages for loss of the crane parts and financial records, and the award for lost equipment and general damages is affirmed. The judgment is amended to award judicial interest. Costs are assessed against plaintiff-lessee.
AMENDED AND AFFIRMED.