h GAUDIN, Judge.
Plaintiffs Al J. Campbell and David Johnson were awarded $2,500.00 for conversion of their property in a judgment rendered against David Millet on June 28, 1996 in the 40th Judicial District Court. Campbell and Johnson filed this appeal, contending they were due more. Also, they argue that the judgment erroneously made a lump sum award to two individual petitioners. Johnson is Campbell’s son; they resided together.
Millet also filed an appeal but it has been dismissed. He had argued that the award was improper.
For the following reasons, the $2,500.00 award is affirmed and divided equally between Campbell and Johnson.
Conversion consists of an act or acts in derogation of another’s possessory rights and any wrongful exercise or assumption of authority over another’s goods, depriving him of possession either permanently or for an indefinite time. See Unique Construction Company, Inc. v. S.S. Mini Storage, Inc., 570 So.2d 161 (La.App. 5 Cir.1990), in which the Court pointed out at page 164 that even though a defendant’s actions are tortious, a plaintiff must prove his damages.
On October 14, 1994, Millet purchased 16.943 acres in Reserve, ^Louisiana known as “the old Tinguaru Sugar Mill” and which for years had been used as a junk and salvage depot by Campbell, Johnson and others. Campbell testified that he and Johnson had been on the property about eight years before 1994 and that they had tools, equipment and salvage items there. They said they had full authority to be in business there from a man named “Mr. Diasselliss” and another man named Remy Gross, who allegedly owned the land and who, Campbell said, received a portion of the business proceeds.
Photographs in evidence show that the property had been used as a kind of community dump for old and apparently abandoned junk automobiles, tires, yard waste and scrap and debris of various kinds. Several persons lived there in trailers.
Prior to Millet’s purchase of the property from Guaranty Income Life Insurance Company, Guaranty had foreclosed on the land and had taken title at a sheriffs sale on August 12, 1994. The previous owner was 2001, Inc.
Once Millet became owner and it became apparent that Campbell and Johnson were not interested in either paying rent or vacating the property, testimony and documents in evidence clearly show this, Millet hired a security guard and padlocked the entrance gate. Millet said he locked the gate to stop further unauthorized dumping of trash and to “... have no problems with DEQ.” The property was not adequately insured, he said, and there had been competing claims for some of the so-called “junk.” Also, he added, he had been contacted by the sheriff because "... the place had been under surveillance for many months. There were several tenants on the property who were drug addicts. They were doing crack cocaine. They had been arrested several times.”
Campbell and Johnson were allowed back on the property to remove 1 .-¡“about 600” used ear tires and all of their equipment, provided, according to Millet’s testimony, they removed the tires first.
Millet said he went to the site after his purchase and saw Johnson, with a blow *838 torch, cutting a 300,000 gallon steel tank into three-foot by three-foot sections to sell as scrap metal. Millet stated that he told Johnson that he was “stealing” and “taking things that don’t belong to you.” Campbell said that Remy Gross had sanctioned what Johnson was doing to the steel tank.
Campbell and Johnson did remove most of the tires, about 80 percent according to Millet, before the gate was locked again. Millet said Campbell and Johnson had at least 15 days “free rein” to remove the tires and their other possessions. When they “stopped moving,” Millet said, “I put the lock on.”
Campbell said they removed most of the tires but when he and Johnson returned to take off the rest of their “stuff,” they were locked out. “Everything I had,” Campbell testified, “was locked up but the little pickup truck ...”
According to the record, the trial judge on November 23,1994 gave Campbell and Johnson 15 days to remove their tools and equipment. Millet said that Campbell and Johnson were allowed the 15 days plus “extra time.”
Johnson testified that he and Campbell had made a living from their activities on the subject property. He said:
“I think we were probably making five, seven grand a year, just off the junk we was hauling off and off the cars, you probably be looking at another four grand.”
Campbell and Johnson had no occupational license and paid no taxes. pThey had filed no personal or business tax returns for 1993, 1994 or 1995. Campbell said that “Mr. Dias-selliss” had a “paper” confirming the fact that he and Johnson had “authorization from Mr. Remy Gross” to be on the property but no such document was produced at trial. Gross was never a registered owner of the land.
After Campbell and Johnson filed this conversion action on November 4, 1994, they listed various items they contend Millet prevented them from removing from his (Millet’s) land because the gate was locked. The list includes hand tools valued at $1,500.00, tool boxes ($800.00), hydraulic lift table ($600.00), John Deere riding lawn mower ($1,000.00), trailer axle ($2,000.00), pressure washer ($2,800.00), bobcat ($14,000.00), table saw ($3,200.00), hydraulic cylinders ($4,000.00), bush hog ($1,000.00), differential ($2,000.00), transmission ($3,000.00), truck radiators ($1,000.00), etc. The alleged value of the listed property was approximately $50,000.00, but no documents were submitted to show either cost or proof of ownership.
Campbell and Johnson also claimed damages for loss of income but they had no authenticating business records or IRS income tax returns.
Both Campbell and Johnson testified they saw two men they identified as Rufus Warren and Michael Carter using their (Campbell’s and Johnson’s) property or burning some of it. At trial, Campbell and Johnson were prevented from testifying about statements supposedly made to them by Warren and Carter. The trial judge ruled correctly. There was no proof that either Warren or Carter was employed at any time by Millet and there was no proof that either Warren or Carter was air agent acting for on or behalf of Millet. Millet did not admit any association with either Warren or Carter except that Warren cut the grass in exchange for storage of his vehicles. IsHis only employee, Millet said, was the security guard at the gate.
Warren and Carter were not subpoenaed and did not testify. There was no showing that they were unavailable. Likewise, Remy Gross and “Mr. Diasselliss” were not called as witnesses.
In summary, we find no illegal conversion by Millet. Everything he did was in conjunction with his ownership of the land, a fact Campbell and Johnson were aware of. Millet did not take or destroy any of appellants’ property. Campbell and Johnson had reasonable time to remove their equipment and if they did not it wasn’t Millet’s fault. If Millet’s appeal had not been dismissed and was ongoing, it would have been given serious consideration.
Nonetheless, the trial judge, although obviously not very impressed by appellants’ claims for damages, did award $2,500.00. We divide this amount equally. Campbell *839 and Johnson complained about the lump sum award but offered no suggestion as how the division should be made.
Each party will bear his cost of this appeal.
AMENDED AND AFFIRMED.