HANS J. LILJEBERG, Judge.
| .Plaintiff, Santo A- DileOj Sr., appeals the trial court’s December 5, 2014 : Judgment in his favor in. the amount of $6,134.72 on a cause of action for the conversion of furniture and rugs.. Mr. Dileo seeks an increase in the amount of the special damages awarded to $23,106.00. Mr. Dileo also contends the trial court erred by failing to award him general damages for his inconvenience, humiliation and aggravation, as well as his court costs.
Defendant, Dottie Boudreaux, appeals the trial court’s October 16, 2013 Judgment, which denied her exception of no right of action, as well as the trial court’s pre-trial ruling which precluded her from *1194 pursuing unrelated reconventional demands against Mr. Dileo and. evidentiary-rulings rendered during the trial. Ms. Boudreaux also appeals the December 5, 2014 Judgment and contends the trial court erred by failing to assess comparative fault between herself and co-hdefendant, Connie Slaven Horn.[1] For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY

Mr. Dileo filed this lawsuit to recover damages he allegedly suffered from the alleged conversion of several pieces of furniture and two rugs he owned. In his petition for damages, Mr. Dileo alleged that his sister, Dottie Boudreaux, and his former girlfriend, Connie Slaven Horn, conspired to convert the following items:
1) Mahogany entertainment center pur- . chased in October 1993, for $4,249.50 from the .Gatehouse Gift Shop at the Biltmore Estate located in Asheville, North Carolina.
2) Two Martha Washington wingback fabric and wood chairs purchased in October 1993, for $606.00 from Wil-dermere, Inc. in Hickory, North Carolina.
3) Qum runner rug (measuring 4.9" x 18.1") purchased in December 1991, for $1,591.40 from Parvizian, Inc. in New Orleans, La.
4) Indian rug (measuring 12" x 15") purchased in December 1991, for $3,270.00 from Tachdjian Oriental - Rugs in New Orleans, La.'
In response to the petition for damages, Ms. Boudreaux and Ms. Horn filed exceptions of no right of action alleging that Mr. Dileo was no longer the owner of the furniture and rugs because he abandoned them. The trial court held an extensive evidentia-ry hearing on these exceptions and heard testimony from several witnesses, including Ms. Horn, Mr. Dileo and Ms. Bou-dreaux. The trial court denied the exceptions and signed a judgment on . October 16, 2013, which stated “that petitioner at no time abandoned the furniture and rugs forming the basis of this lawsuit to either defendants, (sic) Connie Slaven Horn or Dottie Boudreaux.:., ” Therefore, according to the trial court, Mr. Dileo maintained ownership of the furniture and rugs. The parties tried the matter before the trial 14court on April 28, 2014, and September 30, 2014.[2] Prior to and during the trial, the trial court stated it would not relitigate the decision regarding' abandonment.
At trial, Mr. Dileo testified that he entered into a relationship with Ms. Horn in late -2008. Shortly after entering into the relationship, Mr. Dileo retrieved the furniture and rugs described above from stor-age at Ms. Boudreaux’s property, and moved them into Ms. Horn’s home. Mr. Dileo ended his relationship with Ms. Horn in January 2010, but did not remove his furniture and rugs from her home at that time.
Ms. Horn testified that at some point in 2010, she wanted to remove the furniture from her spare bedroom to allow her granddaughter to move in with her. Ms. Horn attempted to contact Mr. Dileo by phone several times to ask him to remove the furniture and rugs from her home, but claimed she was unable to reach him and left a voicemail. Ms. Horn testified that at some point she - communicated with Mr. Dileo and he told her to place the furniture on the curb. •
*1195 Later in the trial, Ms, Horn provided contradictory testimony and stated she never spoke to Mr. Dileo about the furniture. She stated a woman named Pam Giambelluea contacted her and indicated that Ms. Boudreaux wanted the furniture and had a place to store it. Ms. Horn then contacted Ms. Boudreaux and asked if she would take the furniture. Ms. Boudreaux agreed and arranged for a van to pick up the furniture and rugs in January 2011.' When she took possession of the items, Ms. Boudreaux signed a piece of paper which stated, “Pick up Furniture.” According to Ms. Horn, Ms. Boudreaux removed the furniture and two rugs outlined above. However, Ms. Boudreaux denied taking the Qum runner' rug. During her cross-examination of Ms. Boudreaux, Ms. Horn attempted to obtain an ^admission from Ms. Boudreaux that she knew Ms. Horn did not have the authority to give Ms. Boudreaux ■ the furniture and rugs.
Mr. Dileo denied receiving any calls or messages from Ms. Horn about moving the furniture and rugs from her home. He also denied telling Ms. Horn to put the furniture and rugs on the curb. Mr. Dileo testified that once he had a place to which he could move the furniture and rugs,' he contacted a mutual friend, Aline Foreman, in June 2011, and asked her to contact Ms. Horn about retrieving his furniture and rugs. After talking to Ms. Horn, Ms. Foreman informed Mr. Dileo that Ms. Horn had given the furniture and rugs to Ms. Boudreaux.
On June 15, 2011, Mr. Dileo sent an email to Ms. Horn's sister, Vivian Twil-beck, and asked Ms. Twilbeck to convince Ms. Horn to return his furniture to him. Ms. Twilbeck confirmed that Ms. Bou-dreaux picked up the furniture and rugs months ago. She further stated, “Pam told your sister about the furniture. Your sister called Connie demanding the furniture and then showed up at her house with a truck, and two men.” Mr. Dileo testified that Ms. Twilbeck also sent him a copy of the paper which Ms. Boudreaux signed when she removed the furniture from Ms. Horn’s home. .
Mr. Dileo further testified that after he received the receipt signed by Ms. Bou-dreaux when she took possession of the furniture, he confronted his sister. He claimed she initially denied having any knowledge regarding the furniture and rugs, but later admitted she had the items, but refused to return them to him. -
Ms. Boudreaux testified that she thought Ms. Horn had the authority to transfer the furniture and rug to her based on Mr. Dileo’s instruction to place them on the curb. She admitted she was no longer in possession of the entertainment center, because shortly after removing the items from Ms. Horn’s home in January 2011, Ms. Giambelluea moved the entertainment center to her home in Florida. bShe further testified that Ms. Giambelluea told her that Mr. Dileo said she could have the entertainment center. However, Ms. Bou-dreaux also admitted she provided contradictory information in her interrogatory answers where she stated she still had possession of the furniture and rug at her home in Ponchatoula, La. Ms. Boudreaux testified that she still maintained possession of the two chairs and Indian rug, but they were moldy and damaged from being in storage. It is unclear what happened to thesecond rug.
The trial court took the matter under submission. On December 5, 2014, it entered a judgment in favor of Mr. Dileo and “against defendants, Dottie Boudreaux and Connie Horn, jointly and in solido, in the full and true amount of Six Thousand One Hundred Thirty . Four and 72/100 ($6,184.72) Dollars.” The trial court included reasons with its judgment and indi *1196 cated that it based its award on the original purchase price of the items, as opposed to accepting the values for the furniture and the rugs assigned by the experts presented by Mr. Dileo and Ms. Boudreaux. The trial court further indicated that it reached its damages award by reducing the purchase price by twenty percent (20%) for depreciation and by an additional twenty percent (20%) for the comparative fault of Mr. Dileo.
Mr. Dileo filed a timely motion for new trial arguing, inter alia, that the trial court erred by applying the doctrine of comparative fault to the intentional tort of conversion. The trial court entered a judgment denying the motion for new trial on May 19,2015, and in the reasons included in its judgment noted that it was not improper for the trial court to apply the doctrine of comparative negligence because the defendants’ conversion of the furniture and rugs was not intentional:
In support of his Motion for New Trial, plaintiff raised several arguments, all of which were carefully considered by this court. First, he argues that the amount of his award should not have been reduced due to fault attributable to him. His argument is based upon his assumption that this case centers around an intentional tort. His contention would be well founded, if this were in fact, an intentional |7tort. The circumstance of this case does not lend itself to identification as an intentional tort. Examples of intentional tort include battery, false imprisonment, trespass to land, etc. The conversion in this case does not rise to that level. Therefore, the provisions of paragraph C of La. C.C.Art. 2323 does (sic) not apply here.
Mr. Dileo and Ms. Boudreaux both filed timely motions for devolutive appeal and designated the portions of the record which they wanted to comprise the record on appeal.

LAW AND DISCUSSION

Mr. Dileo and Ms. Boudreaux both raise numerous assignments of error on appeal. Prior to addressing Mr. Dileo’s eleven assignments of error, we first address Ms. Boudreaux's argument on the issue of abandonment. Ms. Boudreaux argues in her appellate brief that Mr. Dileo’s entire case should be dismissed because the trial court erred by finding that Mr. Dileo did not abandon the furniture and rugs, and therefore, retained an ownership interest in the items at issue. Ms. Boudreaux argues the trial court was manifestly erroneous in reaching this determination.
Ms. Boudreaux's argument appears to refer to the trial court’s October 16, 2013 Judgment, which denied Ms. Bou-dreaux’s exception of no right of action and further stated that Mr. Dileo did not abandon the furniture and rugs to the defendants. The minute entry from the September 13, 2013 hearing on the exception of no right of action indicates the trial court heard testimony from four witnesses including Ms. Horn, Mr. Dileo, Ms. Bou-dreaux and Mary Denise Slaven. The trial court also accepted exhibits into evidence which are part of this Court’s appellate record. However, the transcript from the September 13, 2013 hearing is not a part of the appellate record, because Ms. Bou-dreaux did not include it in her designation of the record. Furthermore, it does not appear the parties presented a complete record on the abandonment/ownership issues at the trial, because both |sprior to and during the trial, the trial court stated the prior determination on the abandonment/ownership issues was final and would not be re-litigated.
The appellate court shall render a judgment which is just, legal, and proper *1197 upon the record on appeal. La. C.C.P. art. 2164, La. G.C.P. art. 2128 provides that an appellant may designate the record and limit the portions which he desires to constitute the record on appeal. The duty to secure a transcript of the testimony lies with the appellant, and any inadequacy in the appellate record is imputable to the appellant. Olson v. Marx, 04-1137 (La.App. 5 Cir. 3/1/05), 900 So.2d 52, 54-55. When the record does not contain a necessary transcript, “there is nothing for appellate review and the trial court’s ruling is presumed correct.” Id. at 55.
Due to the lack of a transcript of the testimony- heard during the September 13, 2013 hearing on the exceptions of no right of action, it is impossible for this Court to determine whether the trial court was manifestly erroneous in denying the exceptions and finding Mr. Dileo did not abandon the furniture and rugs. According to Olson, supra, we must presume the trial court’s judgment is supported by competent evidence. It is Ms. Boudreaux’s burden to overcome that presumption and prove manifest error. Based on the record before us, Ms. Boudreaux failed to meet that burden.
Mr. Dileo’s first five assignments of error listed below, all relate to the same issues. Therefore, we combine them for discussion. In these assignments of error, Mr. Dileo challenges the trial court’s determination that Ms. Boudreaux’s act of conversion was not intentional, thereby resulting in the trial court’s application of comparative negligence to reduce the damage award.
1. It was an error of law for the Trial Court to extend comparative fault to the intentional tort of conversion.
2. Alternatively, it was manifest error and clearly wrong when the Trial Court made a finding of fact that the actions of Horn and Boudreaux did riot arise to the level of an intentional tort.
j)3. It was manifest error for the Trial Court to give any credence to the testimony of Horn and Boudreaux since the facts alleged by Horn and Boudreaux are so interrially inconsistent and implausible on its [sic] face that a reasonable fact- finder would not credit the testimony of Horn and Boudreaux; therefore this Appellate Court may well find manifest error even in a finding purportedly based upon a credibility determination. •
4. Assuming the intentional tort of con- - version, it was reversible legal error , for the Trial Court to apply comparative fault to petitioner contrary to Civil Code Article 2323(C) where the actions . of defendants, Horn and Boudreaux, amounted to the intentional tort of conversion.
5. It was reversible error for the Trial Court to reduce petitioner’s damage award by 20% where no allegation of contributory or comparative negligence was made by either defendant; hence, the Trial Court cannot enlarge or expand the pleadings to reduce petitioner’s damage award.[3]
As explained above, the trial court reduced Mr. Dileo’s damage award by twenty percent (20%) because it found' Mr. *1198 Dileo bears culpability .for leaving his furniture in Ms. Horn’s house for an extended period of time, without discussing the issue with her. In his motion for new trial, Mr. Dileo argued the trial court’s decision was contrary to law because La. C.C. art. 2828(C) prohibits the reduction of damages based on a plaintiffs negligence when the loss occurs as a result of a defendant who commits an intentional tort. The trial court denied the motion for new trial and found it was . not improper to apply comparative negligence because the. conversion in this case did not rise to the level of an intentional tort....
Louisiana courts have repeatedly indicated an act of conversion is an intentional tort committed in derogation of the plaintiffs possessory rights. F.G. Bruschweiler (Antiques) Ltd. v. GBA Great British Antiques, L.L.C., 03-792 (La.App. 5 Cir. 11/25/03), 860 So.2d 644, 649, writ denied, 04-155 (La.3/19/04), 869 So.2d 859; Kinchen v. Louie Dabdoud Sell Cars, Inc., 05-218 (La.App. 5 Cir. 10/6/05), 912 So.2d 715, 718, writ denied, 05-2356 (La.3/17/06), 925 So.2d 544; Aymond v. Department of Revenue & Taxation, 95-1663 (La.App. 1 Cir. 4/4/96), 672 So.2d 273, 275; Melerine v. O’Connor, 13-1073 (La.App. 4 Cir. 2/26/14), 135 So.3d 1198, 1203; Broussard v. Lovelace, 610 So.2d 159, 162 (La.App. 3 Cir.1992), writ denied, 615 So.2d 343 (La.1993).
An act of conversion is committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from- the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel. Dual Drilling Co. v. Mills Equipment, 98-343 c/w 98-356 (La.12/1/98), 721 So.2d 853, 857.
The intent required for conversion is not necessarily that of conscious wrongdoing, but rather an intent to exercise a dominion or control over an item in a manner inconsistent with the plaintiffs rights. Louisiana State Bar Asso. v. Hinrichs, 486 So.2d 116, 121 (La.1986). Conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner’s rights. F.G. Bruschweiler, 860 So.2d at 649. Any wrongful exercise or assumption of authority over another’s goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. Id. at 649-50. Although a party may have rightfully come into possession of another’s goods, the subsequent refusal to surrender the goods to one who is entitled to them may constitute conversion. Id.
In a conversion suit, it is not a defense that the defendant acquired the plaintiffs property through the plaintiffs unilateral mistake, or the defendant acted in complete innocence and perfect good faith. Aymond, 672 So.2d at 276.
|nLa. C.C. art. 2323(C) states “[njotwith-standing the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.” Even prior to the enactment of La. C.C. 2323(C), Louisiana courts refused to reduce damages based on a plaintiffs contributory/comparative negligence when a defendant committed an intentional act of conversion. Broussard, 610 So.2d at 162; Hebert v. First Guar. Bank, 493 So.2d 150, 155 (La.App. 1 Cir.1986); South Texas *1199 Lloyds v. Jones, 273 So.2d 853, 855 (La.App. 2 Cir.1973).[4]
In Hebert, supra, the court provided the following reasons for refusing, to apply comparative negligence to reduce damages awarded for conversion:
Our research fails to reveal any Louisiana case law applying either contributory negligence or comparative fault in the context of an intentional tort setting. The case law of most jurisdictions does not allow either contributory negligence or comparative fault as a defense to an intentional tort. See Woods, Comparative Fault, infra. Wrongful conversion is an intentional tort and recovery therefor is not barred by contributory negligence. Comparative negligence, which has taken the place of contributory negligence in Louisiana, is likewise not applicable to reduce the damages to which the victim of an intentional tort is entitled. Woods, H., Comparative Fault, §§ 7.1 and 7.2. (The Lawyers Co-Operative Publishing Co., 1978).
Id. at 155.
In her response to Mr. Dileo’s arguments on these issues, Ms. Boudreaux contends she did not engage in any intentional acts because she thought Mr. Dileo had dispossessed himself of ownership of the furniture and rugs when he told Ms. Horn to put these items on the. curb. However, as stated above, a defendant’s good 11Pfaith is not a defense to conversion. Aymond, supra. Furthermore,-even after Mr. Dileo notified Ms. Boudreaux he wanted the furniture and rugs back, she refused to return them to him. Even if Ms. Boudreaux rightfully came into possession of Mr. Dileo’s furniture and rugs, her subsequent refusal, to .surrender them back to Mr. Dileo constituted conversion.
Ms. Boudreaux also argues this suit does not involve a conversion claim, but rather a determination regarding the owner of the furniture and rugs... Ms. Bou-dreaux’s characterization of the claims heard during the trial of this matter is simply not accurate., Prior to the start of the trial, the trial court explained it would not reconsider the prior determination that Mr. Dileo did not abandon the furniture and rugs. The trial, court further explained the issues for trial were whether the defendants.engaged in an.act of conversion and whether Mr. Dileo incurred damages as a result of the conversion.
Finally, Ms. Boudreaux argues La. C.C. art. 2323(C) does not apply because Mr. Dileo also engaged in intentional conduct. However, this argument ignores the trial court’s prior finding that Mr. Dileo did not abandon- the furniture and rugs to the defendants. Furthermore, we find no indication in the trial court’s rulings that it found Mr. Dileo engaged .in intentional conduct.
The trial court determined defendants committed an act of conversion, but *1200 found their conduct did not rise to the level of an intentional tort. It is undisputed an act of conversion is an intentional tort -in Louisiana. Therefore, the trial court erred as a matter of law by concluding defendants engaged in unintentional acts of conversion and by applying comparative negligence to reduce Mr. Dileo’s damages.
Assignments of Error Nos. 6 through 9 relate to the same issues so we combine them for discussion. In these assignments of error, Mr. Dileo disputes the | iaamount of special damages the trial court awarded for the furniture and rugs as follows:
6. It was manifest error and clearly wrong when the Trial Court applied a 20% depreciation to the already appraised values of the converted furniture and rugs of appellant where the record is devoid of any testimony by either expert or witness concerning depreciation.
7. It was an error of fact when the Trial Court used $6,400 as the appraised value of appellant’s Entertainment Center ' whereas expert Goldberg had appraised the Entertainment Center at $8,500.00.[5]
8. It was manifest error and clearly wrong the manner in which the Trial Court made its calculations of the valuations of appellant’s converted furniture and rugs; hence, the appellate court should make its own ■ calculations to the end that $23,106.00 is the damage award to appellant.
9. It was reversible error of law for the Trial Court not to apply the adverse preshmption against Boudreaux and her expert, O.J. Hooter, where they claimed to have photographs of conditions of converted furniture and rugs, but failed to introduce those photographs at trial.[6]
In the reasons assigned in its December 5, 2014 Judgment, the trial court set forth the' following chart comparing the purchase price of each item of furniture, as well as the values assigned by Mr. Dileo’s expert, David Goldberg, and Ms. Bou-dreaux’s expert, O.J. Hooter:
[[Image here]]
The trial court awarded a total of $6,134,72 for the furniture, which the trial court itemized as follows: Entertainment center-$2,719.68; Qum Runner— -$934.40; 12 x 15 Indian rug-$2,092.80; and 2 wingback chairs — -$387.84. In its | -reasons, the trial court explained that it *1201 determined the values of each item based on the purchase price and then made deductions for - depreciation (20%) and Mr. Dileo’s comparative negligence (20%).
Mr. Dileo first argues it was manifestly erroneous for the trial court to use the purchase prices to determine the value of the furniture and rugs. Mr. Dileo argues this Court should award $23,100.00 as recommended by his expert, which he contends represents the current cost to replace the furniture and rugs. In response, Ms. Boudreaux argues the trial court’s valuation was reasonable and not manifestly erroneous based on the evidence presented.[7]
Under the manifest error standard of review, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989); 2800 Assocs., L.L.C. v. Eagle Equity Ltd. P’ship, 10-687 (La.App. 5 Cir. 3/29/11), 64 So.3d 283, 290. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong,.but whether the factfin-der’s conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880, 882 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.; Arias v. Certified Coating, Inc., 05-446 (La.App. 5 Cir. 2/14/06), 924 So.2d 298, 301-02. The assessment of the appropriate amount of damages by a trial judge is a determination of fact, and entitled to great deference by the reviewing court. Guillory v. Lee, 09-075 (La.6/26/09), 16 So.3d 1104, 1116; Tamayo v. Am. Nat’l Gen. Ins. Co., 14-130 (La.App. 5 Cir. 9/24/14), 150 So.3d 459, 465.
| njUnder Louisiana law, the traditional damages for .conversion consist of the return of the property itself, or if the property cannot be returned, the value of the property at the time of the conversion. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756, 761 (La.1985); Unique Constr. Co. v. S.S. Mini Storage, Inc., 570 So.2d 161, 164 (La.App. 5 Cir.1990). In a suit for wrongful conversion, just as in any other tort action, the plaintiff bears the burden of proving the extent of the damages he suffered. Id.
In Dual Drilling Co., 721 So.2d at 858, the Supreme Court noted it was improper to award the plaintiff the cost of new, better equipment in a conversion case. Rather the appropriate award was the cost to purchase used equipment which would be similar to the converted equipment. Id. In Gibbs v. Harris, 35,239 (La.App. 2 Cir. 10/31/01), 799 So.2d 665, 670, the trial court found the plaintiff was not entitled to recover any damages in a conversion case due to her failure to prove the fair market value of her property at the time of conversion.
In support of his argument to apply replacement costs, Mr. Dileo quotes the trial court’s ruling cited in Dillon v. New Orleans, 534 So.2d 1373, 1374-75 (La.App. 4 Cir.1988). However, the appellate court in Dillon reversed the trial court’s ruling and found that evidence of the replacement values of the converted items presented by plaintiff failed to satisfy her burden to establish the value at the time of the conversion.
*1202 The replacement costs presented by Mr. Dileo fail to satisfy his burden to prove damages because Mr. Dileo’s expert based his valuations on .the amount it would cost to purchase brand new rugs and furniture. This amount would place Mr. Dileo in a better position than at the time of the conversion because- he would obtain the value for brand new items as opposed to the value of used furniture and rugs. The trial court’s refusal to award the replacement cost amount proposed by | iBMr. Dileo’s expert was not manifestly erroneous and we also decline Mr. Dileo’s invitation to increase the amount of damages on this basis.
Mr. Dileo also argues it was improper for the trial court to fail to consider that the value of the furniture and rugs appreciated and it was also erroneous for the trial court to apply depreciation to reduce the damages awarded. However, Mr. Dileo’s expert did not testify that any of the furniture or rugs appreciated or increased in value over time. Mr. Dileo failed to prove any appreciation in value occurred.
Furthermore, despite the well-established rule that the proper measure of damages is the value of the converted property at the time of the conversion, Mr. Dileo chose to present expert testimony which only established the cost to purchase brand new furniture and rugs. The trial court could have determined Mr. Dileo failed to satisfy his burden of proof and declined to award any damages whatsoever, or it could have awarded only $1,800.00 in damages based on the testimony from Ms. Boudreaux’s expert regarding the value of the furniture and one of the rugs at the time of conversion. Instead, the trial court endeavored to reach a middle ground by using the purchase price and decreasing that amount based on the age of the furniture and rugs, as well as the fact that Mr. Dileo moved and stored these items several times. See Unique Constr. Co., 570 So.2d at 165 (finding evidence including description of property and purchase price may be sufficient to satisfy plaintiffs burden to prove damages in a conversion case). Based on the foregoing, we do not find the trial court acted erroneously by using the purchase price and depreciation to determine the value of the furniture and rugs at the time of conversion.
Considering our prior determination that the trial court erred by applying the doctrine of comparative negligence, we find the trial court should have only 117reduced the total purchase price by twenty percent (20%) for depreciation. The total purchase price of the furniture and rugs is $9,585.50. Therefore, we find the proper award of damages for the value of the furniture and rugs is $7,668.40.
In his tenth assignment of error, Mr. Dileo argues it was manifest error and clearly wrong for the trial court to refuse to award non-peeuniary damages for his inconvenience, humiliation and aggravation.
The trial court is awarded great discretion in deciding whether to award general damages as a result of an act of conversion. Jackson v. Brumfield, 442 So.2d 518, 521 (La.App. 1 Cir.1983). The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Augillard v. Gaspard, 01-1333 (La.App. 5 Cir. 5/30/02), 820 So.2d 1177, 1181.
In its judgment on the motion for new trial, the trial court noted Mr. Dileo failed to present sufficient proof of non-pecuniary damages. On appeal, Mr. Dileo fails to point to any evidence in the record to support an award of non-pecuniary or general damages. Rather, Mr. Dileo’s own *1203 testimony establishes that almost a year and a half passed before he made any efforts to ascertain the status of the furniture and rugs he left at Ms. Horn’s home. We cannot say the trial court abused its discretion in failing to award general damages in this case. , ■
In his' final assignment of error, Mr. Dileo argues the trial court erred in failing to award him expert witness fees and other court costs. In its judgment, the trial court provided that each party should bear its own costs.
La. C.C.P. art.1920 gives a trial court great discretion in taxing court costs in any manner it considers equitable, and the trial court’s assessment Will not be reversed on appeal in the absence of an abuse of discretion. Hacienda Constr., Inc. v. Newman, 10-18 (La.App. 5 Cir. 6/29/10), 44 So.3d 333, 337.
lisWith respect to the expert fees, the testimony provided by Mr. Dileo’s expert witness was not useful to the trial court because he failed to use the proper valuation for a conversion case by providing replacement costs rather than the fair' market value of the furniture and rugs. As stated above, the trial court may enter any judgment regarding, costs that is equitable and we see no abuse of discretion in its decision to have each party bear its own costs.
With respect to Ms. Boudreaux’s appeal, in her first assignment of error, she argues the trial court erred by limiting her reconventional demands against Mr. Dileo to the claims related to Mr. Dileo’s principal demand for the furniture. The trial court .ruled La. C.C.P. art 1061 requires a connection between the plaintiffs main demand and the reconventional demand. In her, appellate brief, Ms. Bou-dreaux contends that no connection is required and the trial court should have allowed her to present evidence of claims against Mr. Dileo for “storage fees, property damage and rent unrelated to the principal demand.”
The relevant allegations in Ms. Bou-dreaux’s reconventional demand against Mr. Dileo are as follows:
XV.
Defendant-in-reconvention, Santo A. Dileo, has stored movables on the property or properties of petitioiier-in-reconvention from the year 2000 through present, some for the entire time, without paying storage for same, and Ms.'Boudreaux is entitled to storage fees.
First, we note these allegations do.not set forth any claims for “rent” or “property damages.”[8] Therefore, the only issue before this Court is whether the trial court erred in refusing to allow Ms. Boudreaux to present' evidence in support liflpf her reconventional demand for storage fees for any items" other than the furniture and two rugs at issue in the conversion claim.
La. C.C.P. art. 1061(A) provides as follows:
The defendant in the principal action may assert in a reconyentional demand any causes of action which he may have *1204 against the plaintiff in the principal action, even if these two parties are domiciled in the same parish and regardless of connexity between the principal and reconventional demands. [Emphasis added.]
The Official Revision Comments (1960) note that “[t]his article permits a defendant to urge against the plaintiff any action which he might have.... It prevents multiplicity of suits and encourages the settlement of all disputes between the parties at one time.”
Based on the clear language of the La. C.C.P. art. 1061(A), the trial court erred as a matter of law when it refused to allow Ms. Boudreaux to pursue her claim for storage fees for items unrelated to the furniture and rugs at issue in the main demand. Consequently, we remand this matter to allow Ms. Boudreaux to present evidence with respect to her reconventional demand for storage fees only for those unrelated items.
In her second assignment of error, Ms. Boudreaux contends the trial court erred with respect to two evidentiary rulings.
Ms. Boudreaux first argues the' trial court erred in excluding hearsay testimony from Natalie Henderson, Ms. Boudreaux’s daughter, regarding an alleged adulterous affair in which Mr. Dileo engaged with Pam Giambelluca.[9] Ms. Boudreaux contends this evidence is relevant to prove Mr. Dileo’s credibility and the “remaining reconventional demand alleging constructive possession and fraud and conspiracy on the part of Dileo and Giambellu-ca.. ..”[10]
LnMs. Boudreaux proffered Ms. Henderson’s testimony regarding her conversation with Ms. Giambelluca about the adulterous relationship Ms. Giambelluca was having with Mr. Dileo. Ms. Bou-dreaux argues this ruling was incorrect based on the hearsay exception set forth in La. C.E. art. 804(B)(3) as the testimony constitutes a statement against interest by an unavailable declarant. Ms. Boudreaux contends Ms. Giambelluca was unavailable because she lives in Florida and could not be compelled to appear as a witness.
A district court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of discretion. Burgard v. Allstate Ins. Co., 04-1394 (La.App. 5 Cir. 5/31/05), 904 So.2d 867, 879, writ denied, 05-1743 (La.1/13/06), 920 So.2d 240.
Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801. Hearsay is inadmissible at trial unless an exception applies. La. C.E. art. 802.
*1205 La. C.E. art. (804)(B)(3) provides an exception to the hearsay rule in the case' of a “statement against interest.” If the de-clarant. is unavailable as a witness, “[a] statement which was at the time of its making so far contrary to the declarant’s pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true” is admissible . hearsay. La. C.E. art. 804(B)(3).,.
12iA declarant is “unavailable” when the declarant cannot or will not appear in court and testify to the substance of his- statement made outside of court. La. C.E. art. 804(A). This includes situations in which the declarant “is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.” La. C.E. art. 804(A)(5).' A de-clarant is not unavailable for the purposes of La. C.E. art. 804(A)(5) unless the proponent of the statement presents proof of his diligent and good faith effort to obtain the declarant’s presence at trial. Driscoll v. Stucker, 04-0589 (La.1/19/05), 893 So.2d 32, 50. The proponent of the statement bears the burden of proving the unavailability of the declarant. Finch v. ATC/Vancom Mgmt. Servs. L.P., 09-483 (La.App. 5 Cir. 1/26/10), 33 So.3d 215, 218.
In Finch, this Court found the trial court was not manifestly erroneous in refusing to admit evidence as a statement against interest where the party seeking to introduce the evidence merely alleged the witness resided out of state and failed to provide any other proof of his efforts to secure the witness’ presence at trial. Id. at 219-220. Just as the party in Finch, Ms. Boudreaux did nothing more than allege Ms. Giambelluca is unavailable because she resides out of state. Ms. Bou-dreaux failed to present any evidence of her efforts to secure Ms. Giambelluca’s presence at trial. The trial court’s refusal to allow Ms. Henderson to testify regarding Ms. Giambelluca’s out of court statements was not manifestly erroneous.
Ms. Boudreaux also argues the trial court committed manifest error by refusing to allow Ms. Henderson to testify regarding a search she conducted on the internet for “porn websites” associated with Mr. Dileo. Ms, Boudreaux proffered Ms. Henderson’s testimony, as well as sexually .explicit pictures, allegedly obtained from the website. Ms. Boudreaux argues this evidence is relevant to impeach Mr. | g2Pileo’s credibility because he denied any association with such websites. At trial, Mr. Dileo objected to this, evidence as hearsay and the trial court sustained the objection.
In support of her argument, Ms. Bou-dreaux cites to State v. Poupart, 11-710 (La.App. 5 Cir. 2/28/12), 88 So.3d 1132, 1143, writ denied, 12-705 (La.10/8/12), 98 So.3d 867. In Poupart, this Court found pictures' which included statements obtained from an- internet website were not hearsay because they were' not' offered to prove the truth of the matter asserted, but rather merely to show the pictures were in fact posted on the internet. The Poupart case involved criminal charges against a defendant for public intimidation of ah officer. The defendant admitted to witnesses that he would post compromising photographs of the officer if the officer testified against him. The defendant posted the photographs with statements and the State sought to introduce the photographs to demonstrate the defendant followed through with‘his threat.
The situation before this Court is completely different from Poupart. Ms. Bou-dreaux seeks to introduce testimony and evidence from her daughter, Natalie *1206 Henderson, regarding sexually explicit pictures she allegedly located on the internet. Ms. Henderson offered no proof to establish a connection between these photographs and Mr. Dileo other than this site came up as a result when she searched Mr. Dileo’s name on an internet search engine. The trial court did not abuse its discretion by refusing to allow this evidence.
•In her third assignment of error, Ms. Boudreaux argues the trial court erred by failing to apportion fault between herself and Ms. Horn. Ms. Boudreaux argues that pursuant to La. C.C. art. 2324, unless defendants engage in a conspiracy, comparative fault applies between the defendants. Ms. Boudreaux contends she did not engage in a conspiracy because she believed Ms. Horn had the right to | ¡«transfer the furniture to her, and further alleges Mr. Dileo failed to prove she and Ms, Horn conspired to convert the furniture and rugs.
We , agree Louisiana law required the trial court to apportion fault between the co-defendants, Ms. Horn and Ms. Bou-dreaux. However, this issue does not turn on whether or not defendants engaged in a conspiracy as proposed by Ms. Boudreaux. The, Louisiana legislature has instructed trial courts to determine the fault of all parties who contribute to a plaintiffs loss. See La. C-C. art. 2323;. La. C.C.P. arts. 1917(B) and 1812(C), Whether defendants engaged in a conspiracy determines whether defendants are liable “in solido” or solidary obligors, thereby allowing Mr. Dileo to recover the entire damage award from either of the defendants.[11]
We first address whether the trial court erred by failing to apportion fault between Ms. Horn and Ms. Boudreaux.
La. C.C. art. 2323 provides that the fault of all persons contributing to a loss shall be determined:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined,
[[Image here]]
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
Furthermore, La. C.C.P. art. 1917(B) states that in nonjury cases involving a request for damages, the trial court shall make specific findings regarding issues set forth in La. C.C.P. art. 1812:
B. In nonjury cases to recover damages for injury, death, or loss, whether or not requested to do so by a party, the court shall make specific findings that shall include fijóse matters to which reference is made in Paragraph C of Article 1812 of this Code. These findings need not include reasons for judgment.
latLa. C.C.P. art. 1812(C) provides in pertinent part:
C. In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:
(1) Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:
(a) Whether such fault wás a legal cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage.
*1207 Some courts previously have found that when defendants conspire and are solidary obligors pursuant to La. C.C. art. 2324(A), it is unnecessary to allocate fault between these defendants because they are each liable to the plaintiff for the entirety of the damages awarded. See, e.g., Scott v. Am. Tobacco Co., 04-2005 (La.App. 4 Cir. 2/7/07), 949 So.2d 1266, 1290; Kennedy-Fagan v. Estate of Graves, 07-1062 (La.App. 1 Cir. 7/21/08), 993 So.2d 255, 262-65, writ denied, 08-2079 (La.11/10/08), 996 So.2d 1073.
However, La. C.C. arts. 2323,’ 1917 and 1812 do not set forth an exception for solidary obligors with respect to the trial court’s obligation to assign fault. Furthermore, while a solidary obligor is fully liable for the entire amount of damages awarded to the plaintiff, La. C.C. art. 1804 pérmits a solidary obligor who pays the entire award to seek contribution in the amount of the virile portion owed by each obligor. La. C.C. art. 1804 provides that the virile portion is determined from the fault assigned to each solidary obligdr: ■
Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obli-gor.
A solidary obligor who has rendered the whole performance, though, subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.
| g^Based on the foregoing, we find that as a matter of law, the trial court erred by failing to assign the percentage of fault attributable to Ms. Horn and Ms. Boudreaux in accordance with the requirements set forth in La. C.C.P. arts. 1812(C) and 1917(B), and La. C.C. art. 2323(A). When an appellate court finds the trial court made a reversible error of law, it is required, whenever the state of the record on appeal so allows, to redetermine the facts 'de novo from the entire record and render a judgment on the merits. Wooley v. Lucksinger, 09-571 c/w 09-584, 09-585, 09-586 (La.4/1/11), 61 So.3d 507, 555. Therefore, we will make a de novo determination of the percentage of fault that should be assigned to Ms. Horn and Ms. Boudreaux.
Mr. Dileo .testified the furniture and rugs were in perfect condition when he removed them from Ms. Boudreaux’s home and placed them in Ms. Horn’s home in 2009. There is no testimony to indicate the condition of the furniture and rugs deteriorated while they were in Ms. Horn’s home. ' , . ■ ¡
Ms. Boudreaux took possession of the items in January 2011, and six months later in July 2011,' Mr. ’ Dileo asked Ms. Boudreaux to return the furniture and rugs to him. However, Ms. Boudreaux refused. Ms. Boudreaux admitted she allowed Ms. Giambelluea to take the entertainment center. Ms. Boudreaux’s expert inspected two chairs and 12'xl5" Indian rug in 2014. He testified that the fabric was torn and the wood needed to be refinished on the two chairs. He further testified that the mg reeked of mold and mildew.
The trial court determined that defendants converted Mr. Dileo’s furniture and, two rugs. While Ms. Horn bears responsibility for transferring the furniture to Ms. Boudreaux, it appears the majority of the damages arose after Ms. Boudreaux took possession of the items. If Ms. Boudreaux had maintained possession of all of the items and returned them to Mr. Dileo in June 2011, there would be little or -l^no damages owed to Mr. Dileo. Therefore, *1208 we assign thirty (30%) percent of the fault to Ms. Horn and seventy (70%) percent to Ms. Boudreaux.
Ms. Boudreaux’s third assignment of error also raises the issue of whether Ms. Horn and Ms. Boudreaux engaged in a conspiracy to convert the property. If they conspired, then pursuant to La. C.C. art. 2324(A), the defendants are liable, “in solido,” thereby entitling Mr. Dileo to recover the entire damage award from either defendant.
. In his petition for damages, Mr. Dileo alleged that Ms. Horn and Ms. Boudreaux conspired to convert his movable property, and prayed for a judgment for damages against them “jointly, severally and in sol-ido.” The trial court’s December 5, 2014 Judgment' does not explicitly state that Ms. Horn and Ms. Boudreaux conspired to convert Mr. Dileo’s property. However, the judgment held defendants liable “jointly and in solido” for the damages awarded to Mr. Dileo.
La. C.C. art. 2324(A) provides “[h]e who conspires with 'another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.” McKenzie v. Imperial Fire & Cas. Ins. Co., 12-1648 (La.App. 1 Cir. 7/30/13), 122 So.3d 42, 47-48, writ denied, 13-2066 (La.12/6/13), 129 So.3d 534. Following the 1996 amendments' to La. C.C. art. 2324, commentators recognized that solidary liability was abrogated under this provision except for those who conspire as set forth in Section A of La. C.C. art. 2324. See, William L. Crowe, Sr., Joint and Several Tort Liability in the Louisiana Civil Law — Requiem for a Mocking Bird?, 44 Loy. L.Rev. 703, 735. Therefore, because the trial court held Ms. Horn and Ms. Boudreaux liable “in solido,” we must conclude the trial court agreed with Mr. Dileo’s allegations that defendants conspired to convert the furniture and rugs pursuant to La. C.C. art. 2324(C).
|j>7We are aware of the trial court’s subsequent reasons for judgment provided with its denial of Mr. Dileo’s motion for new trial, wherein the trial court stated it did not believe defendants acted intentionally and therefore, justified its application of comparative fault to reduce Mr. Dileo’s damages. However, the trial court did not amend its judgment to remove the “in solido” language. Furthermore, a trial court’s reasons for judgment are not controlling and do not constitute the judgment of the court. Dufresne v. Dufresne, 10-963 (La.App. 5 Cir. 5/10/11), 65 So.3d 749, 754. Where the trial court’s reasons for judgment are flawed, but the judgment is correct, the judgment controls. Id. Appellate courts examine the result of the judgment rather than the reasons. Id.
•Furthermore, after reviewing the record, a finding that defendants conspired to convert Mr. Dileo’s property is not manifestly erroneous.

DECREE

For the foregoing reasons, we affirm the judgment of the trial court in part, reverse in part and remand this case for further proceedings. Specifically, we reverse the trial court’s reduction of damages for comparative fault and recalculate the special damages awarded to $7,668.40. We further find the trial court failed to apportion fault between the defendants, and assign thirty (30%) percent fault to defendant, Connie Slaven Horn, and seventy (70%) percent fault to defendant, Dottie Bou-dreaux. ■ We also reverse the trial court’s ruling which prohibited defendant, Dottie Boudreaux, from pursuing her reconven-tional demand for storage fees for items unrelated to the furniture and rugs at issue in this matter. We remand this mat *1209 ter for farther proceedings on this recon-ventional demand.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED

. Ms. Horn did not appeal the trial court's judgments against her.

. Mr. Dileo and Ms, Horn represented themselves during the trial proceedings.

. Mr. Dileo's argument regarding the defendants' failure to plead comparative negligence . as an affirmative defense is moot based on this .Court’s finding that comparative negligence does not apply to his conversion claim. Regardless, though the defendants did not use the term "comparative negligence" in their answers, they both included arguments and defenses regarding Mr. Dileo’s alleged abandonment of the furniture and rugs which would be sufficient to allege an affirmative defense.

. Ms. Boudreaux contends that Justice Ca-logero stated comparative fault'may apply when a defendant engages in intentional conduct in his consent opinion in Scott v. American Tobacco Co., Inc., 02-2449, 02-2452 (La.11/15/02), 830 So.2d 294, 299-300. However, Ms. Boudreaux's quote from this case inaccurately attributes the court of appeal’s ruling to Justice Calogero. As demonstrated by the following complete quotation, Justice Calogero - opined - that comparative fault may not apply to reduce a plaintiff’s damages .when a defendant .engages in intentional conduct:
Accordingly, I would go further than the majority decision (in which I concur) and address the court of appeal’s finding that comparative fault principles may be applied to reduce the plaintiffs’ entitlement to damages caused by the defendant’s intentional tortious conduct. Were the court now addressing that issue, I would hold that comparative fault principles may Hot be applied for that purpose. [Emphasis added.]

. Mr. Dileo argues the trial court erred when it noted Mr, Goldberg’s appraised value as $6,40.0 rather than $8,500. In his expert report, Mr. Goldberg assigns a value of $8,500 to the. entertainment center. However, Mr. Goldberg did not testify to this amount at trial. Regardless, as discussed more fully below, this assignment of error is moot because the trial court did not base its damages award on this expert testimony.

. This assignment of error is also moot because the trial court did not base its damages award on the values assigned by either expert.

. Ms. Boudreaux did not contest the amount of damages awarded for the furniture and rugs in her appeal.

. In her answer, Ms. Boudreaux raised an affirmative defense of set-off for "[r]oom and board from the year 2000 through 2009 off and on” and "damage to her property caused by petitioner.” However, for compensation or setoff to apply, the parties must owe each other sums of money that are liquidated and presently due. La. C.C. art. 1893; Boudreaux v. Hydraulic Rebuilders & Serv. Co., 98-126 (La.App. 5 Cir. 5/27/98), 713 So.2d 1148, 1151, writ denied, 98-2185 (La.11/13/98), 731 So.2d 258. Furthermore, set-off is not allowed in a suit for wrongful conversion. La. C.C. art. 1894; Hebert, 493 So.2d at 156-57; Neff v. Ford Motor Credit Co., 347 So.2d 1228, 1232 (La.App. 1 Cir.1977).

. According to Ms. Horn, Ms. Giambelluca was also Mr. Dileo’s girlfriend at the same time he was dating her. Mr. Dileo denied having a romantic relationship with Ms. Gi-ambelluca.

. Ms. Boudreaux did not allege a reconven-tional demand against Mr. Dileo for fraud and conspiracy with Ms. Giambelluca. Rather, Ms. Boudreaux alleged a third-party demand against Ms. Giambelluca claiming that in 2012, Ms. Giambelluca contacted Ms. Bou-dreaux and indicated that Mr. Dileo authorized Ms. Giambelluca to take the entertainment center. Following trial, the trial court did not enter judgment on the third-party demand either for or against Ms. Giambellu-ca, and Ms. Boudreaux did not raise the trial court’s failure to rule on this claim as an issue in her appeal. The only remaining reconven-tional demand is for storage fees, and the alleged adulterous relationship is not relevant to this claim.

. The purpose of solidary liability is to compel any tortfeasor to pay the entire judgment. Ross v. Conoco, Inc., 02-0299 (La.10/15/02), 828 So.2d 546, 552.