925 So.2d 583 (2006)
Debra C. BROWN
v.
UNKNOWN DRIVER, Viola Browder and State Farm Mutual Automobile Insurance Company.
No. 2005-CA-0421.
Court of Appeal of Louisiana, Fourth Circuit.
January 18, 2006.
*584 Allen H. Borne, Jr., Ryan P. Reece, New Orleans, Counsel for Plaintiff/Appellee.
*585 Mark E. Hanna, McCranie Sistrunk Anzelmo Hardy Maxwell & McDaniel, Metairie, Counsel for Defendants/Appellants.
(Court Composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr., and Judge LEON A. CANNIZZARO, Jr.)
MAX N. TOBIAS, JR, Judge.
The defendants, Diedre Johnson and State Farm Mutual Automobile Insurance Company ("State Farm"), appeal from a judgment entered against them in the amount of $8,170.45. After reviewing the record and applicable law, we reverse the judgment.[1]
This case stems from an automobile accident that occurred at approximately 8:45 p.m. on 16 January 2001 in New Orleans, Louisiana. The plaintiff, Debra Brown ("Brown"), was operating a 2001 Honda CRV on Washington Avenue when a vehicle operated by an unknown driver allegedly struck the passenger side of her vehicle as she slowed to turn into a gas station. After checking on her nine-year old son who was in the back seat, Brown got out of her vehicle and approached the driver of the other car. The driver, whose vehicle was "stuck" to the plaintiff's vehicle, allegedly spoke to her and laughed about the accident. The driver then sped off, but not before the plaintiff and an eyewitness, Keyanka Bell, each independently wrote down the vehicle's license plate number, ETT366. The plaintiff also collected parts of the other vehicle that allegedly broke off as a result of the impact.
Brown contacted a friend who worked at the St. Charles Parish Sheriff's Office and was told the license plate number was for a 1996 Toyota Tercel registered to Viola Browder ("Browder"). Later that night, the plaintiff went to a New Orleans Police Department ("NOPD") station to submit a statement. In that statement, she described the color of the vehicle that struck her as black or navy blue. She also gave them the license plate number and the name of the vehicle's owner. However, Brown did not tell the police that she had collected debris at the scene.
Browder, the registered owner of the vehicle that allegedly struck the plaintiff, had died in November 1998. After her death, the ownership of the vehicle passed to her daughter, Diedre Johnson ("Johnson"). However, title to the vehicle was not transferred to Johnson until after the date of the alleged accident. Brown brought suit against John Doe, as the alleged driver, Johnson, on a negligent entrustment theory, and State Farm, as insurer of the vehicle allegedly involved in the accident.
After a bench trial, the trial court rendered a judgment in favor of Brown and against the defendants, Johnson, John Doe, and State Farm, in the amount of $8,170.45 for general and special damages. *586 No reasons were given by the trial court for the judgment.
The defendants have assigned as error the following:
1. The trial court erred in rendering judgment against Johnson;
2. The trial court erred in rendering judgment against a John Doe defendant;
3. The trial court erred in rendering judgment against State Farm;
4. The trial court erred in finding that the vehicle owned by Johnson was involved in the accident made the subject of this lawsuit; and
5. The trial court erred in failing to find that the medical records submitted into evidence do not support the plaintiff's claim for damages. In the alternative, the bill of Dr. Terry O'Neill should be reduced.
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless its finding of fact is "clearly wrong;" where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Nevertheless, when the court of appeal finds that a reversible error of law or manifest error of material fact was made by the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits. Id. at 844 n. 2.
Under either scenario, this court will summarize the evidence presented at trial. The first witness called by the plaintiff was Johnson, under cross-examination. She testified that the Toyota Tercel was her mother's car purchased new in 1996. After her mother died, the car remained in her mother's name until Johnson paid off the loan. There were three sets of keys to the vehicle: two were in the possession of Johnson; her sister, Debbie Browder, had the third set. However, Johnson testified that after her mother's death, she was the sole driver of the vehicle. She also testified that her sister could not have driven the car, although she did not know who had access to the set of keys in her sister's possession.
Johnson testified that on the night in question, she was home "perming" her hair and did not drive the car. It was parked on the side of her house. The vehicle was never missing or reported as stolen. She also testified that the license plate had never been taken from the car. In the time she has possessed the vehicle, it was never taken to a body shop for repairs.
Johnson testified that she received a letter from the NOPD asking her to bring in her vehicle. When she arrived at the police station, she and a police officer examined the car, which revealed no damage. After doing so, the officer dismissed the complaint.
Brown testified at trial that the vehicle that hit her was a small dark-colored car, either black or green. Although she obtained the names of several witnesses, she could not remember their names. However, one witness, Keyanka Bell, gave her an envelope with the license plate number of the hit and run vehicle; it was the same number the plaintiff herself had recorded.[2] The plaintiff described the driver of the car as a very dark African-American male, *587 19-22 years old, who was small in size and had several gold teeth.
Under cross-examination, Brown admitted that she did not describe the car as green in the statement she gave to police on the night of the accident. In addition, she did not tell the police that she had collected debris at the scene and could not recall if she reported the names of the witnesses. She claimed to have kept the debris in the back of her vehicle until she gave it to her attorney.
Some time later, the plaintiff contacted the police and was told that the car for which she had provided the license plate number had been brought in and was not damaged.
The plaintiff introduced into evidence the deposition testimony of Ms. Bell, who stated that she had seen the accident and written down the license plate number that she then gave to the plaintiff. Ms. Bell also testified that a large hubcap came loose from the hit and run vehicle, which rolled into a nearby gas station. Although she had written down the license plate number, she could not identify that number at her deposition and was unable to identify the make, model, or color of the vehicle involved in the accident.
Finally, the plaintiff presented the testimony of Leon Muller, a body and fender technician, who worked at a Toyota dealership for four years. He reviewed the parts given to him by the plaintiff's attorney and identified them as coming from a 1995, 1996, or 1997 Toyota Tercel. He could not, however, state that the parts had come from Johnson's vehicle. He also testified that the Toyota Tercel did not have a solid hubcap, but instead used a wheel rim with a small black center cap.
Following the presentation of the plaintiff's case, the defendants moved for a dismissal of Johnson. Although the trial court denied the motion, the court stated:
I'm going to deny the motions for this reason. While the Court believes that there's been no evidence shown that Ms. Johnson drove the vehicle or that she gave anybody permission. The Court agrees with you completely on that.
But Ms. Johnson's testimony was that her sister also had a set of keys. She testified also that sometimes her sister drove the car. And then she said that maybe her sister could have driven the car on that day.
And then she recanted and said no her sister did not drive the car. And then she did not know what the arrangement was between her mother and her sister concerning driving the car.
Her sister did have a set of keys to the car. Based on that the Court cannot rule out that or a possibility of someone else having driven the car whether or not it was with Ms. Johnson's permission.
But the Court can't rule out the fact that somebody else may have driven the car. Although the Court does agree that there is absolutely no evidence against Ms. Johnson that she drove the car or that she gave anybody permission.
The first witness presented by the defendants was Michelle Guin, a State Farm claim representative, who investigated the plaintiff's claim in January 2001. She was shown a photograph of the plaintiff's car taken on the day she brought it in to be adjusted. The only damage to the vehicle was a white smudge right above the handle on the rear passenger door; Ms. Guin did not see any black marks on the rear passenger door.
When the plaintiff brought in her vehicle, she did not inform Ms. Guin that she had any parts that may have come from *588 the hit and run vehicle. In fact, the plaintiff did not inform her of that fact in any of their conversations.
Ms. Guin received notification from an attorney, Rusty Solomon, that he was representing the plaintiff. However, she later received a letter from Mr. Solomon's office indicating that he no longer represented Brown because of a lack of proof that the other vehicle identified was involved in the accident.
The next defense witness was Maurice J. Baudy, Sr., another State Farm claim representative, who investigated the accident at issue in this case. He opened the file on 2 February 2001, after Johnson contacted State Farm that a claim was being made against her. He asked Johnson to bring in her vehicle to be photographed and to make a statement. Johnson came to his office about 20 days after the accident and denied being involved in the accident. Mr. Baudy inspected the vehicle and found no physical damage. He gave this information to Mr. Solomon, who was then representing the plaintiff. Mr. Baudy also obtained a copy of the police report stating that the Johnson vehicle had been cleared by identification as having no damage. After conducting his investigation, Mr. Baudy denied the claim.
Debbie Browder, Ms. Johnson's sister, also testified for the defense. She admitted to having a set of keys to the Toyota Tercel, but denied ever driving the car after her mother died. She stated that, on 16 January 2001, the date of the accident, she did not drive the car, did not loan the car to anyone, and had her set of keys in her possession.
Under cross-examination, Ms. Browder admitted having a boyfriend at the time of the accident, but said that he never learned to drive a car and did not have a driver's license. She was not asked to physically describe her boyfriend. She also stated that she could not say for certain that the vehicle was in her sister's possession on the date of the accident. She herself had never reported the car stolen and was not aware of unauthorized use of the vehicle at any time.
Finally, Johnson testified. She again stated that she did not loan the car to anyone on the day before or day of the accident. She also testified that at the time of the accident, she was home and the car was parked on the side of the house. She admitted to having a boyfriend at the time, who was then about 30 years old. He is a light-skinned African-American who worked from 3 p.m. until 11 p.m. at the New Orleans Hilton Riverside as a security guard. He never drove her car.
Johnson testified that she did not have the car repaired after the date of the alleged accident. She stated that she was pregnant at the time and did not have money to spend on car repairs or anything else of that nature.
The claim against Johnson is that of negligent entrustment. In Louisiana, owners of motor vehicles are ordinarily not personally liable for damages, which occur while another is operating the vehicle. Exceptions to this rule occur only when the driver is on a mission for the owner of the vehicle, when the driver is an agent or employee of the owner, or when the owner is himself or herself negligent in entrusting the vehicle to an incompetent driver. Ruthardt v. Tennant, 252 La. 1041, 1054-55, 215 So.2d 805, 810 (La.1968); Mitchell v. Wall, 482 So.2d 817, 819-20 (La.App. 4 Cir.1986); Aupied v. Joudeh, 96-202, p. 3 (La.App. 5 Cir. 4/9/97), 694 So.2d 1012, 1014, writ denied, 97-1583 (La.10/10/97), 703 So.2d 605.
Under the theory of negligent entrustment, the lender of a vehicle is not *589 responsible for the negligence of the borrower unless he knew or should have known that the borrower was physically or mentally incompetent to drive; if the lender knew or should have known of the borrower's incompetence, then he is responsible for the harm resulting from the incompetent operation of the vehicle. Oaks v. Dupuy, 32,070, p. 4 (La.App. 2 Cir. 8/18/99), 740 So.2d 263, 266.
Brown argues that the Supreme Court case of Manzella v. Doe, 94-2854 (La.12/8/95), 664 So.2d 398, compels a finding in her favor. In that case, a New Orleans Aviation Board ("NOAB") vehicle struck the plaintiff's vehicle. The plaintiff was able to later identify the driver of the NOAB vehicle, a NOAB employee. The Court stated:
Moreover, Mr. Manzella identified Ramon Reece, an NOAB employee as the driver of the truck, an identification which was apparently accepted by the trial judge. Mr. Reece testified that at times he was allowed to drive the truck off the airport grounds. The identification of Mr. Reece as the driver is supported by the fact that it was evident that the driver was well acquainted with other maintenance division Board employees, since he was permitted to drive off the premises through a gate manned by a security guard. Under these circumstances, we find that the driver of the NOAB truck left the airport premises with the implied initial permission of the Board.
Id. at 7, 664 So.2d at 402.
Manzella is easily distinguished from the instant case, where the alleged driver of the Johnson vehicle was never identified. In addition, the NOAB vehicle had been damaged and thus one could reasonably conclude that it had been involved in an accident. We cannot arrive at the conclusion that express or implied permission was given by Johnson based on the Court's reasoning in Manzella. Further, no evidence exists that the Johnson vehicle was damaged on the night of the alleged accident.
The plaintiff also relies on Robinson v. Doe, 02-0258 (La.App. 5 Cir. 9/30/02), 829 So.2d 577, where the owner of the vehicle that struck the plaintiff had given an identified woman permission to drive the vehicle. While an unknown man was driving the vehicle at the time of the accident, the trial court concluded that the identified woman gave permission to the man who was driving the vehicle at the time of the accident. Id. at 3, 829 So.2d at 578-79. Again, as in Manzella, the vehicle in question was found damaged after the accident.
We find our previous decision of Washington v. State Farm Mutual Automobile Insurance Co., 97-1931 (La.App. 4 Cir. 3/25/98), 709 So.2d 360, is analogous to the matter sub judice. In Washington, the plaintiff was unable to identify the driver of the vehicle in which he was riding at the time it was involved in the accident and did not present the testimony of the vehicle's owner to prove express or implied permission to operate the vehicle. In the instant case, the plaintiff has failed to prove that Johnson gave express or implied permission to operate her vehicle on the night of the accident.
As recognized by the trial court, no evidence exists in the record that Johnson or her sister gave anyone permission to drive the vehicle on the night of the accident. At trial, Johnson testified that she did not loan the vehicle to anyone on the date of the accident. In addition, Ms. Browder testified that she had not driven the vehicle since her mother died in 1998, and denied loaning the vehicle to anyone on the date of the accident.
*590 The only evidence that supports the plaintiff's claim against Johnson is the recordation of the license plate number by both the plaintiff and Ms. Bell. However, the original documents on which the license plate number was recorded were not introduced into evidence. Further, we place no probative value in the debris Brown allegedly collected on the night of the accident. Surely she would have given the debris to the police, her first lawyer who eventually refused the case, or even to State Farm to support her claim. The fact that the debris came from a Toyota Tercel manufactured between 1995 and 1997 does not prove that the debris came from Johnson's vehicle. Finally, no evidence was introduced proving that the Johnson vehicle was repaired between the time of the accident and the police officer's inspection of the car. The plaintiff failed to carry her burden of proof in all respects.
Since we find that Johnson was not negligent, State Farm, her insurer, cannot be cast in judgment. A liability policy is written for the benefit of third parties who suffer injury or damage because of the action of the insured. Lou-Con, Inc. v. Gulf Building Services, Inc., 287 So.2d 192, 206 (La.App. 4 Cir.1973), writ denied, 290 So.2d 899 and 290 So.2d 901 (La.1974). The insurer's liability is contingent upon proof of the negligence or tortious conduct of the insured. Musmeci v. American Automobile Insurance Co., 146 So.2d 496, 501 (La.App. 4 Cir.1962). The primary object of automobile liability insurance is to "indemnify the policy holder for an injury for which he might be liable because of the ownership, maintenance, or use of a motor vehicle . . . ." 7 Blashfield, Automotive Law and Practice Section 291.1, 3rd Edition (1966); 12 Appleman, Insurance Law and Practice Section 7001 (1981). Since we find that the policyholder, Ms. Johnson is not negligent, State Farm is not liable to pay whatever damages Ms. Brown may have incurred.
Finally, we also reverse the judgment against the John Doe defendant. A suit for damages is commenced by the filing of a petition. La. C.C.P. art. 891. Citation and service of the petition upon a defendant, unless waived, is required in order to obtain a judgment against a defendant. La. C.C.P. art. 1201. Pursuant to La. C.C.P. art.2002, a judgment is absolutely null for failure of a defendant to receive notice of the suit; where there is a failure to serve the defendant with citation and a certified copy of the petition, a judgment cannot be rendered against him or her. Advanta Bank Corp. v. First Mount Zion Baptist Church, 03-732, p. 4 (La.App. 5 Cir. 12/30/03), 865 So.2d 165, 167. In the instant matter, the John Doe defendant was never identified, much less cited or served. Therefore, the judgment against this defendant is an absolute nullity and must be reversed.
Because we find that the defendants are not liable to the plaintiff, we pretermit discussion of State Farm's remaining assignments of error. In addition, we deny the plaintiff's request for attorney's fees and costs associated with defending the present appeal.
REVERSED.
CANNIZZARO, J., concurs in the result.
NOTES
[1] The judgment was rendered on 7 September 2004. The office of the Clerk of Court for First City Court for the City of New Orleans, however, did not mail the judgment until 13 September 2004, as evidenced by the affidavit from the Honorable Ellen M. Hazeur, the Clerk of Court. In addition, the First City Court and its clerk's office were closed from noon on 14 September 2004 though, and including, 17 September 2004, due to Hurricane Ivan. On 20 September 2004, the defendants filed a timely petition for suspensive appeal and accompanying bond. In addition, the plaintiff filed a motion for new trial on the same day, which was denied by the trial court in January 2005. Due to the closures of the clerk's office as the result of Hurricane Ivan, as well as the intervening weekend days, the notice of appeal filed on 20 September 2004 was timely and the denial of the motion for new trial cured any claim of prematurity. See La. C.C.P. art. 2123(C); Sullivan v. Franicevich, 04-0321 (La.App. 4 Cir. 3/9/05), 899 So.2d 602.
[2] The paper on which Ms. Bell wrote down the license plate number was not admitted into evidence.