| JULIO LABORIEL-PITIO AND FRANKLIN GUSTAVO ARRIOLA | * | NO. 2020-CA-0669 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| LATOYA LATIKER, PROGRESSIVE PALOVERDE INSURANCE COMPANY AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | * | |
| | | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-09729, DIVISION "B-1"
Honorable Rachael Johnson,
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Chief Judge James F. McKay, III, Judge Joy Cossich Lobrano, Judge Paula A. Brown)

*BROWN, J., CONCURS IN THE RESULT*

Darleen M. Jacobs
Al Sarrat
Rene D. Lovelace
JACOBS, SARRAT, LOVELACE, HARRIS & MATTHEWS
823 St. Louis Street
New Orleans, LA 70112

      COUNSEL FOR PLAINTIFFS/APPELLEES

Donald R. Klotz, Jr.
CASLER, BORDELON, LAWLER & GELDER
1425 Airline Drive, Suite 200
Metairie, LA 70001

      COUNSEL FOR DEFENDANTS/APPELLANTS

           **VACATED AND REMANDED**

           **JUNE 16, 2021**

JCL

JFM

This is an automobile tort case. Defendants/appellants, Latoya Latiker ("Latiker") and Progressive Paloverde Insurance Company ("Progressive"), appeal the September 23, 2020 district court judgment, which awarded plaintiffs/appellees, Julio Laboriel ("Laboriel") and Franklin Gustavo ("Gustavo"), $30,000.00 in damages ($15,000.00 per plaintiff) plus legal interest and costs. For the reasons that follow, we vacate the judgment and remand this matter to the district court with instructions. We deny Laboriel and Gustavo's answer to appeal as moot.

This litigation stems from an automobile accident on December 13, 2017, wherein a gray, two-door Chevrolet (the "Gray Chevrolet") collided with the 2013 Honda Pilot driven by Laboriel and occupied by Gustavo. The Gray Chevrolet's driver then abandoned that vehicle and fled the accident scene on foot. It is undisputed that Latiker's license plate was affixed to the Gray Chevrolet. Latiker avers, however, that her license plate was stolen and that neither she nor her vehicle was involved in the accident.

1

On September 27, 2018, Laboriel and Gustavo filed suit against Latiker, her automobile insurer Progressive, and Laboriel's uninsured motorist insurer State Farm Mutual Automobile Insurance Company ("State Farm"), alleging that Laboriel and Gustavo sustained personal injuries in the accident. In their petition for damages, Laboriel and Gustavo alleged that Latiker owned a 2005 Chevrolet Cobalt, insured by Progressive, which she negligently entrusted to an unknown driver whom she knew or should have known was a careless operator. They also alleged, in the alternative, that the unknown driver of an unknown vehicle was at fault for the accident, such that State Farm was responsible for uninsured motorist coverage. Before trial, Laboriel and Gustavo settled and dismissed their claims against State Farm.[1]

This matter proceeded to trial on September 21, 2020, where Latiker and Progressive were the remaining defendants. Laboriel, Gustavo, and Latiker testified at trial.

Laboriel testified to the following account of the accident. On December 13, 2017, at approximately 7:00 p.m., Laboriel was driving a 2013 Honda Pilot, which he owned, and Gustavo was his guest passenger. It was dark outside. Laboriel was planning to pick up paint on his way to work, and he was traveling in the left lane on Dwyer Street in New Orleans East, which is a four-lane divided highway. The Gray Chevrolet ran two stop signs and collided with Laboriel's vehicle. Laboriel's

---

[1] Laboriel also testified at trial that State Farm considered his vehicle "totaled" and paid for his property damage, but not his deductible.

vehicle flipped onto its side and all airbags deployed. "Someone" helped Laboriel out of his vehicle, and Laboriel helped Gustavo exit the vehicle.

Laboriel testified that he did not see any person exit the Gray Chevrolet after the accident. He saw a male and a female leaving the accident scene, but he did not see either of these individuals inside the Gray Chevrolet. Rather, Laboriel saw them nearby and did not know whether they were in the Gray Chevrolet. He did not testify to any description of the male or female. During his testimony, Laboriel identified photographs he took of the Gray Chevrolet at the accident scene. He described the Gray Chevrolet as gray with two doors, bearing Louisiana license plate TPZ 239 with a Chevrolet emblem on the rear. After taking photographs, Laboriel left the accident scene via ambulance for medical treatment. Laboriel returned to the accident scene the next day and took additional photographs, at which time he met and spoke with a police officer.

Gustavo provided a similar account of the accident. He testified that he was a passenger in the Laboriel vehicle. Laboriel was driving, and it was dark outside. Gustavo saw "flashlights" and told Laboriel to be careful. The Gray Chevrolet ran a stop sign and collided with the Laboriel vehicle. On impact, the Laboriel vehicle tipped over on its side and was very damaged. Laboriel helped Gustavo from his vehicle, and Gustavo was transported to the hospital. Gustavo testified that during the accident he saw the Gray Chevrolet, and he identified it from the photographs produced by Laboriel, describing it as gray with two doors. Gustavo did not see anyone exit the Gray Chevrolet.

Latiker testified that on December 13, 2017, she owned a 2005 Chevrolet Cobalt, which was black with four doors, bearing Louisiana license plate TPZ 239 and VIN number 1G1AK52F357666371. She procured an automobile insurance policy from Progressive, which she identified during her testimony. Latiker testified that in December 2017, her vehicle was completely inoperable and had been inoperable for approximately six months prior to that time. During those six months, she had not moved the vehicle, and it remained stationary in the parking lot of her apartment building. According to Latiker, she left the license plate on her vehicle throughout this period. She testified that she was in college at the time and did not have the funds to fix it. Her sister and parents provided her with transportation. She had her vehicle repaired in 2018 after she graduated from college and obtained employment. No repairman testified concerning the repairs to Latiker's vehicle.

Latiker testified that she learned about the accident when she received a call from Progressive. She was home and went outside to her vehicle, which she observed was parked with its license plate missing. Her vehicle was undamaged. Latiker testified that she immediately called the police and filed a police report. To her knowledge, her vehicle was not involved in this accident. During her testimony, she identified photographs that she took of her vehicle after Progressive contacted her, one of which showed the rear of her vehicle with her license plate missing. She testified that she took this photograph the same day that she received the call from Progressive.

4

Latiker was shown a photograph that Laboriel took of the Gray Chevrolet at the accident scene. Latiker denied that the Gray Chevrolet was her vehicle. Latiker testified that she was not at the accident scene. She was not in a vehicle that was involved in an accident. She denied any involvement in this accident. She did not know who stole her license plate. She did not know when her license plate went missing.

The evidence admitted at trial included, in relevant part, the Progressive policy, photographs by Laboriel of his vehicle and the Gray Chevrolet at the accident scene, photographs by Latiker of her vehicle upon Progressive notifying her of the accident, medical records and bills of Laboriel's and Gustavo's treatment, and the police report of the accident. The Progressive policy lists bodily injury liability limits of $15,000.00 per person and $30,000.00 per accident. The policy declarations page shows Latiker as the only named insured and a "2005 Chevrolet Cobalt 4 Door Sedan VIN: 1G1AK52F357666371" as the only listed vehicle. The Laboriel photographs of the Gray Chevrolet at the accident scene depict a light gray or silver vehicle with a visibly crumpled hood and bearing Louisiana license plate TPZ 239. The Latiker photographs of her vehicle depict an undamaged black vehicle without a license plate. Laboriel introduced medical bills for his post-accident treatment totaling $15,242.42, and Gustavo introduced his medical bills totaling $8,640.00.

The police officer who investigated the accident was subpoenaed to testify at trial, but he did not appear. Laboriel and Gustavo initially proffered the police

report, which described the Gray Chevrolet as a two-door, 2005 Chevrolet Cobalt, bearing Louisiana license plate TPZ 239 and VIN number 1G1AK52F357666371. Latiker and Progressive objected to the introduction of the police report on the grounds that they could not cross examine the officer about how he learned the Gray Chevrolet's VIN number and whether he looked at the VIN number on the Gray Chevrolet at the accident scene. Latiker and Progressive argued that the officer's body camera footage showed that the officer never approached the Gray Chevrolet to look at its VIN number. Ultimately, following a colloquy between the attorneys and the district court, the police report was admitted into evidence and the trial judge viewed the officer's body camera footage of his investigation. The body camera footage, however, was not introduced into evidence and is not part of the record on appeal.

In closing arguments, Laboriel and Gustavo contended that they established a prima facie case that the Gray Chevrolet was Latiker's vehicle and that it was insured. They also argued, in the alternative, that even if the Gray Chevrolet was not Latiker's vehicle, insurance coverage applies if Latiker was driving the Gray Chevrolet.

At the close of trial, the district court judge stated her ruling and oral reasons as follows:

> I know it's clear to everyone the plaintiffs definitely have the burden to establish liability in any case like this. Clearly based on the evidence and the testimony there was an accident, right, and the accident was between the plaintiff's Honda Pilot and a Chevy automobile. It also was established that the defendant's

6

license plate was on the Chevy that was involved in the accident.

Before I go on any further, I do want to just say that all of the witnesses seem credible to the Court, so my reasoning and ruling took into account both plaintiffs' and the defendant's testimony and everyone seemed to be testifying credibly.

The defendant testified that she wasn't aware that the plate from her vehicle was missing until two days after the accident when her insurance company actually called her. She did testify that she reported the plate stolen to the police, although that report and that information didn't come into evidence. Also, there was no other corroborating testimony or evidence presented regarding the plate being stolen. We know that it was on that vehicle.

So then in this case it really comes down to the policy and any exclusions that may apply and that's the defendant's burden is to show that the exclusion applies, and I think plaintiff's counsel cited the *Breland* [*v. Schilling*, 550 So.2d 609 (La. 1989)] case where the insurer has the burden of proving that a policy exclusion precludes recovery and any policy exclusion has to be narrowly construed and any ambiguity should be construed in favor of coverage. The defendant argues that there's no coverage under the policy because of the stolen plates and there was a different vehicle other than the one that's owned by defendant and named in the policy.

We know that insurance policy language is clear that there are instances when a vehicle other than the one named in the policy is covered under a policy. We know that there are instances … in policy language when although there's a named auto on the face of the policy, there are instances when other vehicles can be covered under that policy.

It's this Court's opinion that the defendant failed to meet the burden to prove that one of these policy exclusions applies in this case and so I am finding that there is liability.

That being said, plaintiffs established that they were injured. They treated for their injuries and all of the treatment was related to the injuries sustained in this

7

accident, so the Court is going to award 15,000 to each plaintiff and costs associated with the actual filing and things of that nature. I'm not saying 15 plus medical specials. I'm saying 15 total each plus costs. That's my judgment.

On September 23, 2020, the district court rendered judgment against Latiker and Progressive and in favor of Laboriel and Gustavo, awarding each plaintiff $15,000.00 plus legal interest and costs. This appeal followed. Laboriel and Gustavo answered the instant appeal, seeking an excess judgment against Latiker.

"Generally, a court of appeal may not set aside a trial court's or jury's finding of fact in absence of 'manifest error' or unless it is 'clearly wrong.'" *Chambers v. Vill. of Moreauville*, 11-0898, p. 4 (La. 1/24/12), 85 So.3d 593, 597 (citing *Evans v. Lungrin*, 97-0541, p. 6 (La. 2/6/98), 708 So.2d 731, 735; *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)). "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Brown v. Unknown Driver*, 05-0421, p. 3 (La. App. 4 Cir. 1/18/06), 925 So.2d 583, 586 (citing *Rosell*, 549 So.2d at 844).

"However, if a legal error interdicts the fact finding process, the manifest error standard of review is no longer applicable, and, if the record is otherwise complete, the appellate court should make an independent *de novo* review of the record and determine which party should prevail by a preponderance of evidence." *Chambers*, 11-0898, p. 4, 85 So.3d at 597 (citing *Evans*, 97-0541, pp. 6-7, 708 So.2d at 735). "There is a legal error when a trial court applies incorrect principles

of law and these errors are prejudicial." *Id.* "Legal errors are prejudicial when they deprive a party of substantial rights and materially affect the outcome." *Id.* "When a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court must, if it can, render judgment on the record by applying the correct law and determining the essential material facts *de novo.*" *Id.*

Plaintiffs posited alternative theories of liability: negligence and negligent entrustment. "The plaintiff seeking damages in a civil action must prove each element of his claim by a preponderance of the evidence." *Bradley v. Safeway Ins. Co. of La.*, 08-1188, p. 2 (La. App. 4 Cir. 5/6/09), 17 So.3d 1, 2. "Established Louisiana jurisprudence employs a duty-risk analysis to resolve negligence claims under La. C.C. art. 2315." *Chanthasalo v. Deshotel*, 17-0521, p. 6 (La. App. 4 Cir. 12/27/17), 234 So.3d 1103, 1107 (citing *Roberts v. Benoit*, 605 So.2d 1032, 1041 (La. 1991)). A plaintiff seeking to prevail under a negligence claim must prove five elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element);
>
> (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element);
>
> (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);
>
> (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and
>
> (5) actual damages (the damages element)[.]

9

*Chanthasalo*, 17-0521, p. 6, 234 So.3d at 1107-08 (citing *Roberts*, 605 So.2d at 1051).

"In Louisiana, owners of motor vehicles are ordinarily not personally liable for damages, which occur while another is operating the vehicle." *Brown*, 05-0421, p. 8, 925 So.2d at 588. "Exceptions to this rule occur only when the driver is on a mission for the owner of the vehicle, when the driver is an agent or employee of the owner, or when the owner is himself or herself negligent in entrusting the vehicle to an incompetent driver." *Id.* (citations omitted). "Under the theory of negligent entrustment, the lender of a vehicle is not responsible for the negligence of the borrower unless he knew or should have known that the borrower was physically or mentally incompetent to drive; if the lender knew or should have known of the borrower's incompetence, then he is responsible for the harm resulting from the incompetent operation of the vehicle." *Id.*, 05-0421, p. 8, 925 So.2d at 588-89 (citation omitted).

"The primary object of automobile liability insurance is to indemnify the policy holder for an injury for which he might be liable because of the ownership, maintenance, or use of a motor vehicle ...." *Id.*, 05-0421, p. 11, 925 So.2d at 590 (internal quotation omitted). A liability insurance policy "is written for the benefit of third parties who suffer injury or damage because of the action of the insured." *Id.* (citation omitted). "The insurer's liability is contingent upon proof of the negligence or tortious conduct of the insured." *Id.* (citation omitted). "[I]n an action on an insurance contract the plaintiff has the burden of pleading and proving

that his claim falls within the general policy, while the insurer has the burden of proving exclusions from coverage." *Pizzetta v. Lake Catherine Marina, LLC*, 08-0648, p. 4 (La. App. 4 Cir. 9/17/08), 995 So.2d 26, 29 (citation omitted).

On appeal, Latiker and Progressive argue that the district court erred in casting them in judgment because (1) Latiker was not connected in any way with the accident, and (2) Progressive did not insure the two-door Gray Chevrolet involved in the accident.[2] They contend that Laboriel and Gustavo have the burden to prove that Latiker was either the owner or operator of the Gray Chevrolet, and according to their argument, plaintiffs failed to meet their burden.

Nevertheless, Latiker and Progressive argue, the district court failed to make findings of fact whether Latiker owned or operated the Gray Chevrolet. We hold that the district court's failure to make findings of fact whether Latiker (or a nonparty operating Latiker's vehicle) was negligent is reversible error. The judgment and/or reasons for judgment are deficient because they do not comply with La. C.C.P. arts. 1917 and 1812(C).

Article 1917 is entitled "Findings of the court and reasons for judgment." Paragraph B governs bench trials in personal injury cases and provides as follows:

> In nonjury cases to recover damages for injury, death, or loss, whether or not requested to do so by a party, the court shall make specific findings that shall include those matters to which reference is made in Paragraph C of Article 1812 of this Code. These findings need not include reasons for judgment.

---

[2] Latiker and Progressive also contend that the district court erred in admitting the police report into evidence. The parties dispute whether an agreement was reached at trial wherein the objection to the police report was waived. Because of our conclusion herein, we pretermit consideration of this issue.

La. C.C.P. art. 1917(B).

Paragraph C of Article 1812 governs the contents of special verdict forms

submitted to juries at trial, and sets forth, in relevant part:

> In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:
>
> (1) Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:
>
> (a) Whether such fault was a legal cause of the damages, and, if so:
> (b) The degree of such fault, expressed in percentage.
>
> (2)(a) If appropriate under the facts adduced at trial, whether another party or nonparty, other than the person suffering injury, death, or loss, was at fault, and, if so:
>
> (i) Whether such fault was a legal cause of the damages, and, if so:
> (ii) The degree of such fault, expressed in percentage.
>
> (b) For purposes of this Paragraph, nonparty means a person alleged by any party to be at fault, including but not limited to:
>
> (i) A person who has obtained a release from liability from the person suffering injury, death, or loss.
> (ii) A person who exists but whose identity is unknown.
> (iii) A person who may be immune from suit because of immunity granted by statute.
>
> (3) If appropriate, whether there was negligence attributable to any party claiming damages, and, if so:
> (a) Whether such negligence was a legal cause of the damages, and, if so:
> (b) The degree of such negligence, expressed in percentage.
>
> (4) The total amount of special damages and the total amount of general damages sustained as a result of the injury, death, or loss, expressed in dollars, and, if

> appropriate, the total amount of exemplary damages to be awarded.

La. C.C.P. art. 1812(C).

Thus, even if no party requests, La. C.C.P. art. 1917(B) mandates that district courts conducting bench trials make "specific findings" which "shall" include, pursuant to La. C.C.P. art. 1812(C):

- whether a particular party (or nonparty) is at fault;

- whether that fault was a legal cause of damages sought;

- the degrees of fault expressed in a percentage; and

- a total amount of special damages and total amount of general damages sustained as a result of the injury, expressed in dollars.

Commentators have remarked that Louisiana law "does not otherwise prescribe the scope of a judge's findings of fact" though such findings may include:

> (1) the judge's credibility determinations; (2) the judge's choice of conflicting inferences, particularly those which determine critical primary facts; (3) the primary facts the judge has found; (4) the judge's resolution of the mixed questions of law and fact; and (5) the rules of law to which the judge applied the fact-findings.

Frank L. Maraist, *Judge Trials*, 1 La. Civ. Law Treatise, *Civil Procedure*, § 11.1 (2d ed.)(footnotes omitted).

The judgment herein is inadequate under Articles 1917 and 1812 as the district court made no factual findings of fault or legal causation of damages. In its oral reasons, the district court found only that an accident took place between Laboriel's vehicle and a Chevrolet, and that Latiker's license plate was affixed to

that Chevrolet. It specifically found all parties' testimony credible, though it simultaneously expressed reservations that no corroborating theft report for Latiker's license plate was introduced into evidence. It then determined that Latiker and Progressive failed to prove the applicability of a policy exclusion.

The oral reasons are incomplete and confusing. The district court did not express that either Latiker or her vehicle was involved in the accident. Remarkably, at the close of testimony, the district court apparently concluded that Latiker's vehicle was not the at-fault vehicle.[3] While the district court found that "there is liability," it made no finding that Latiker was negligent or at fault. The district court likewise did not find that Latiker negligently entrusted her vehicle to a nonparty or that a nonparty negligently operated Latiker's vehicle. Further, the judgment does not state the amount of general damages or special damages awarded. Instead, it awarded as damages the Progressive policy limits to each plaintiff.

We find ourselves unable to determine whether the district court's factual findings were reasonably supported by the record (or manifestly erroneous) or whether the ruling was legally correct. In the absence of the findings required by

---

[3] During the colloquy between the attorneys and the district court concerning the admission of the investigating officer's body camera video, the transcript reflects the judge's exchange with Latiker's and Progressive's attorney:

> MS. QUIGLEY:
> Okay. I was going to look at the video for them to look at the vehicle, but I already got them to admit that the vehicle was not the same vehicle which I think is obvious from –
>
> THE COURT:
> I don't think anybody disagrees with that.

Articles 1917(B) and 1812(C), we cannot discern the factual basis for casting Latiker and Progressive in judgment, and we find the judgment deficient. We are, therefore, compelled to find reversible legal error. *See Anders v. Boudion*, 93-0894, p. 4 (La. App. 5 Cir. 3/29/94), 636 So.2d 1029, 1032; *Dileo v. Horn*, 15-0684, p. 25 (La. App. 5 Cir. 3/16/16), 189 So.3d 1189, 1207; *Smith v. Ebey*, 04-0889, p. 4 (La. App. 3 Cir. 12/29/04), 896 So.2d 143, 147.

"When an appellate court finds the trial court made a reversible error of law, it is required, whenever the state of the record on appeal so allows, to redetermine the facts *de novo* from the entire record and render a judgment on the merits." *Dileo*, 15-0684, p. 25, 189 So.3d at 1207 (citing *Wooley v. Lucksinger*, 09-0571, p. 51 (La. 4/1/11), 61 So.3d 507, 555). Nevertheless, as the Supreme Court has recognized, "[t]he authority for an appellate court to remand a case to the trial court for proper consideration, where it is necessary to reach a just decision and to prevent a miscarriage of justice, is conferred by La. C.C.P. art. 2164." *Wegener v. Lafayette Ins. Co.*, 10-0810, pp. 19-20 (La. 3/15/11), 60 So.3d 1220, 1233-34.[4] "Whether a particular case should be remanded is a matter which is vested largely within the court's discretion and depends upon the circumstances of the case." *Id.*, 10-0810, p. 20, 60 So.3d at 1234 (citation omitted). Remand has been deemed particularly appropriate where a "first-hand view of witnesses" is "essential to a fair resolution of conflicting evidence." *Id.*, 10-0810, p. 19, 60 So.3d at 1233

---

[4] La. C.C.P. art. 2164 provides: "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable."

(quoting *Ragas v. Argonaut Southwest Insurance Co.*, 388 So.2d 707, 708 (La. 1980)).

Considering this standard and the particular legal error involved, we are unable to properly determine the issues raised on appeal by examination of the cold record alone. The district court, however, sitting as fact finder in a bench trial, had the opportunity to examine first-hand witnesses' demeanor and testimony and is in the best position to render its factual findings on the evidence before it. We conclude that the interest of justice is best served by vacating the judgment on appeal and remanding this case for entry of a new judgment reflecting the district court's findings of fact in compliance with La. C.C.P. arts. 1917(B) and 1812(C), most particularly, the fault of parties and nonparties, legal causation, degree of fault expressed in percentage, and dollar amount of general and special damages. *See Lynch v. Progressive Ins. Co.*, 04-0257, p. 5 (La. App. 3 Cir. 10/20/04), 885 So.2d 664, 667.

Considering our conclusion, we deny Laboriel and Gustavo's answer to appeal as moot.

Accordingly, for these reasons, we vacate the judgment, and we remand this matter to the district court with instructions to enter a new judgment and specific factual findings consistent with this opinion.

**VACATED AND REMANDED**